WILLIAMSON et al. vs HILL.

1. By the marriage of a *feme sole* administratrix, the husband becomes joint administrator with her, and if the husband sue or be sued as administrator, the wife must be joined with him : Therefore,

2. The decree of the Orphan's Court against such administrator, cannot be regular, unless she be embraced in it. Though,

3. In cases where the administrator may be charged in his own right, the action lies against the husband alone.

4. Where one comes into an administration in right of his wife, he cannot urge against the claim of a distributee, the invalidity of the grant of adminisration, or the jurisdiction of the Court making the grant, which the wife had sought, and which both had exercised. By the acceptance and exercise of the trust, the jurisdiction is admitted, and cannot afterwards be controverted.

5. Nor can a personal representative, object to a notice required in settlement of the estate, for the want of regularity; it not being intended for his advantage, but for the benefit of creditors and distributees.

6. The statute of 1830, (Aik. Dig. 1st Ed. 252) expressly authorizes a decree by the County Court, in favor of legatees,

Error to the Circuit court of Wilcox county.

Proceedings in the Orphan's Court, against an administrator with the will annexed.

In the Orphan's Court of Wilcox county, in vacation, on the eighth day of August, eighteen hundred and twenty-seven, upon the application of Lucy M. Howell, widow of William H. Howell, deceased, for letters of administration, with the will annexed, on the estate of Caleb Howell deceased, it was made to appear to the court, by the will of said Caleb Howell, deceased, that William H. Howell, the deceased husband of said Lucy M., was appointed sole executor of said will; and it appeared, by the provisions thereof, that a great portion of the estate of the said Caleb Howell, deceased, was bequeathed to Eliza Ann Howell, Justina A. Howell, William Forbes Howell, Caleb Monroe Howell and Mary M. Howell; children of the said W. H. Howell, deceased, and Lucy M. Howell, and grand children of the said Caleb Howell, deceased; and it appeared further to the court, by the production of the copy of the will of William H. Howell, deceased, duly authenticated, that the said Lucy M. Howell was appointed guardian to all the children of William H. Howell, deceased, and Lucy M. Howell; and also that the said Lucy M., widow aforesaid, was appointed executrix of the said last will and testament of William H. Howell, deceased, with Thomas Rhodes as executor: and it appeared also to the court, that the said Caleb Howell, deceased, at the time of his death, had no mansion house, or settled place of residence, within this State, and that a considerable part of the property belonging to said estate, was, at that time, within the county of Wilcox, and that it was the request of said Lucy M. Howell, that her brother, Benjamin Williamson, should be associated with her in the administration.—It was therefore ordered, that letters of administration on the estate of Caleb Howell, deceased, should be granted to said Lucy M. Howell,

widow of said William H. Howell, deceased, and Benjamin Williamson, and that they give bond and security, &c.

The will was as follows:

"In the name of God, Amen. I Caleb Howell, of the County of Baldwin, in the State of Alabama, do make and publish this, my last will and testament, in manner following, that is to say:

"First. I give and bequeath unto my grand children, Eliza Ann Howell, Justina A. Howell, William Forbes Howell, Caleb Monroe Howell, and Mary M. Howell, the following named slaves, to wit: Dick, Lydia, the wife of said Dick, Pompey, Register Frank, Big James, Stephen, Dilcey, Delilah, Frazile, Martha and yellow Peter—share and share alike; which said slaves shall be under the care and management of their father, the said William H. Howell, until the year one thousand eight hundred and thirty-six, at which time an equal division thereof, according to their then values, shall be made among my said grand children.

"*Item*—I give and bequeath unto my above-mentioned son, William H. Howell, one negro man, named Jack Fisher.

"*Item*—I give and bequeath unto my grand-children, Ann E. Powers, Sarah Powers, Samuel Powers, Joseph Powers, Mary Powers, Paul Powers, William Powers, Sarah Powers, and Frances Powers, the children of my daughter, Charity Stokes, the following named slaves, to wit: Jack, and Rose his wife, Jesse and Hannah his wife, Little James, Monday, Jenny, Lydia, Moses, Aaron, Winifred, called Winney, and Grace; and it is my will and desire, that one-third of the negroes hereby bequeathed to my grand-children, the children of my daughter, Charity Stokes, be owned, possessed and enjoyed by my said daughter, Charity Stokes, during her natural life, and at her death they return to her above named children. And which said

slaves, it is my will and desire, be equally divided a-mong my above named grand-children, and their mo-ther, Charity Stokes, in the proportion above mention-ed, on the first day of January, one thousand eight hundred and thirty-six, or as soon thereafter as may be practicable, except that Ann E. Powers shall, have Lydia, on her marriage, and Mary Powers shall have Winney on her marriage. I also give and bequeath to the said Ann E. Powers, and Mary Powers, all my house-hold furniture, to be equally divided between them. And I moreover give and bequeath to my said grand children, the children of my daughter, Charity Stokes, all my stock of cattle, consisting of about six-ty head, to be equally divided among them, share and share alike.

"It is my will and desire, that all my lands, lying in the States of Mississippi and Alabama, be sold by my executor, hereinafter named, for the purpose of rais-ing a fund, for the payment of my debts ; and I here-by authorise and empower my said executor, to sell my said lands, at such times, and on such terms, as he shall deem fit, and to make good and sufficient con-veyances therefor, in law, to the purchaser or purchas-ers thereof.

"I give and bequeath all my other lands, other than those above mentioned, lying in the State of Georgia, or elsewhere, to my grand-children, that is to say : to the children of my son, William H. Howell, and to the children of my daughter, Charity Stokes, to them, their heirs and assigns, forever, as tenants in common, to have and to hold the land aforesaid, to my said grand-children, their heirs and assigns, forever.

"I give and bequeath my pied horse to my daugh-ter-in-law, Lucy Howell, wife of my son, William H. Howell, and it is my will and desire, that all my other horses be sold by my executor, herein-after named, whenever he shall deem it expedient.

"And, lastly, I do hereby nominate and appoint my

son, Wm. H. Howell, sole executor of this my last will and testament—and I do order and request him, to keep all the property herein mentioned, together, until the year one thousand eight hundred and thirty-six, and to apply the hires, rents and profits thereof, with the moneys arising from the sale of the lands hereinbefore ordered to be sold, to the payment of my debts. In testimony," &c.

At July term of the same court, Benjamin Williamson, administrator, &c. was, at his own request, released and discharged from the administration, and Lucy M. Howell, retained as sole administratrix.

And at November term of the same court, eighteen hundred and thirty, Joseph Arrington, who had intermarried with the widow, Lucy M. Howell, administratrix, &c., in right of his wife, petitioned the court for an order of sale of some of the negro property, to meet the demands against the estate: whereupon he had leave to sell a sufficient number of the negroes, to pay the debts of the deceased, and to return an account of his proceedings, according to law, &c.

And at September term of the same Court, eighteen hundred and thirty-one, on application of Thomas Rhodes, executor of the last will and testament of William H. Howell, deceased, who was the executor of Caleb Howell, deceased, said Thomas Rhodes obtained an order to vacate the letters of administration with the will annexed, which had been granted to Lucy M. Howell, who was then Lucy M. Arrington, because it was within the knowledge of the court, that Caleb Howell, at the time of his death, was a resident citizen of Baldwin county, and that the will was recorded in Baldwin county, and that letters thereon were granted to William H. Howell, deceased, in his life time; and because, at the time of the death of the said Caleb, he had no assets in Wilcox county; and because Thomas Rhodes, as executor of

the last will and testament of William H. Howell, deceased, claimed the right of executing the will of said Caleb Howell, deceased.

And on the twenty-fourth of December, eighteen hundred and thirty-four, in vacation, William A. Bettis, in right of his wife, Justina A. Bettis, formerly Justina A. Howell, obtained an order for notice to Lucy M. Arrington and Joseph Arrington, to make settlement of their administration.

And at the May term of the same court, eighteen hundred and thirty-five, on settlement of the affairs of said estate, Eliza A. Howell, one of the legatees, obtained a decree against Joseph Arrington, administrator, &c., in right of his wife, Lucy M., for eleven hundred and thirty-four dollars and eighty-six and a half cents: William J. Bettis, in right of his wife, Justina A. Bettis, formerly Justina A. Howell, obtained a decree against the same defendant, for a like sum: William Forbes Howell, obtained a decree against the same defendant, for a like sum; and Caleb M. Howell obtained a decree against the same defendant, for a like sum, for their distributive shares of the proceeds of the estate; Mary M. Howell, one of the legatees, having died before that date. Upon which decree, execution was issued against defendant, and returned 'no goods.' Execution then issued in favor of William F. Howell, one of the legatees, against Joseph Arrington, administrator, &c., and George Williamson and Benjamin Williamson, securities on the administration bond.

From the decree of the Orphans' court, there was a writ of error taken to the Circuit court.

And at the November term of the Circuit court of said county, the plaintiffs assigned for error—

1. That the original grant of administration, to Lucy M. Howell and Benjamin Williamson, was void,—the County court of Wilcox county having no jurisdiction.

2. The grant of administration was void,—the same being to the prejudice of an executor.

3. The County court erred in not giving the notice required by law to be given, upon the settlement of estates.

4. The proceedings are erroneous, in relation to the settlement, required and ordered,—the judgment or decree being in favor of William F. Howell, when it should have been in favor of the subsequent executor or administrator.

5. The judgment or decree *is erroneous,* being against Joseph Arrington, alone, when it should have been against Joseph Arrington and Lucy his wife.

6. The judgment is erroneous in the amount, being for too much.

And at the same term of the same court, the case having been heard and understood by the court, it seemed to the court, there was no error in the decree of the Orphans' court, and that the same ought to be confirmed. It was therefore considered by the court, that the judgment of the Orphans' court should be, in all things, affirmed, and that the defendant in error do recover, &c.

From this judgment there was a writ of error to this court, and the same matters assigned for error.

*Porter*, for plaintiffs in error, insisted, that the grant of letters of administration to Lucy M. Howell and Williamson, was void. The record sufficiently shewed that a will was proved in Baldwin county, which had been the residence of the testator, and in which his domicil was located. By the statute, the letters were required expressly to be granted in the county where the testator had his residence, and in no event could this rule be departed from.—Aik. Dig. 449, sec. 10–249, sec. 17; 5 Eng. Ec. Rep. 73, 94. Even by the ecclesiastical law of England, this rule obtained, and administration was never granted, where there

was an executor, or an executor of an executor.—
Wms. on Ex'ors, 291; Aik. Dig. 176, sec. 1; 5 Eng.
E. R. 265, 266 ; 1 Nott & M'Cord, 77.    If adminis-
tration were granted before probate, and refusal of
the executor, it would be void upon will found.—Tol-
ler on Ex'ors. 127.    Administration granted where
the court had no jurisdiction, was void.—12 Mod. 617;
1 Esp. 289, 290; Bul. N. P. 141; 3 Salk. 22; 1 Com.
Dig. 355–6, 360, 364; 1 Dane, 561, art 4; 5 Wheeler,
239; 2 Mass. R. 120; 11 ib. 507; 8 Cranch, 9.

The executor here was prejudiced materially, and
the court was to presume that letters testamentary
had issued in Baldwin, and it was impossible that the
two representatives could exercise, legally, those pow-
ers at one and the same time.    The grant to one must
have been void.    For aught that appeared the Or-
phans' Court of Wilcox was controlling the estate,
and exercising jurisdiction there, while the executor
of W. H. Howell was settling up the estate, in Bald-
win.    Such an act would not alone be a violation of
law :    It would be in violation of the rights of the ex-
ecutor, and those claiming under him.—He was se-
lected by the testator, and might be more capable of
managing the estate than the widow or next of kin.

2.  The acts of the administration in this case, were
void for another reason :  If the letters had properly
issued, it could only be  to carry into effect the will.
Now, one of the special charges of this will was, that
the debts should have been paid from the realty ; and
until that was exhausted, the court could grant no or-
der for a sale of the slaves.    These slaves were speci-
fic legacies, and they could not be chargeable with
the debts, until all the other property belonging to the
estate was exhausted.—*Darrington et al. vs Borland,*
3 Porter, 9 ; 5 Wheeler, 292.

3.  The notice given by the court, requiring the set-
tlement of the affairs of the estate, and upon which
the decree was made, was by no means sufficient.—

No notice of the settlement was given to parties inte-- rested, as required by law—Aik. Dig. 182, sec. 27,— and such notice was essential. The notice is intend-- ed by law, to bring in all the parties in interest, and to ascertain the truth of the account which the execu-- tor or administrator might generally make, very much on his own conscience.    The want of notice was, therefore, sufficient to render any account or settle-- ment utterly void.

4. The judgment should have been in favor of the executor who was acting ; or in favor of the guardian of the children.    The statute gave the remedy to one entitled after final settlement.    A minor could not ap-- ply for settlement.—See statute, Aik. Dig. 155, sec. 13. There was no refunding bond given for any default of the administratrix, and for acts after the revocation, the Orphans' court of Wilcox had no jurisdiction.    If any part of the estate was retained, it belonged either to the estate or to the heir.    If the former, an action lay to the executor—if the latter, to the heir, if of full age, or his guardian, if a minor ; and for all defaults before revocation, the action was upon the bond.—2 Har. Dig. 1135—9 Mass. 114.    The power of the County courts was limited to decrees upon matters in the regular course of law.    For an undoubted devas-- tavit, the remedy was on the bond.

5. The execution was, in this case, against Ar-- rington.    He became, it was true, by the marriage, administrator in right of his wife ; but her name should also have been used.    The decree does not even re-- cognise him as administrator.    If liable at all, it was in right of his wife, and any decree the court chose to make against him, could not bind the sureties of his wife.    The sureties never became bound for his acts: they were only bound for such acts of Lucy Howell as occurred previous to their resignation, and after the giving of the new bond.    The first hire received by Lucy, the administratrix, was in January, eighteen

hundred and twenty-nine, and the last bond executed by the sureties, was in October, eighteen hundred and twenty-nine.    All the acts of the administratrix, after the revocation, were invasions upon the rights of the executor; and the Orphans' court could render no decree for defaults after that time; and the decree in this case embraced monies received as late as eighteen hundred and thirty-two.    The letters of administration were revoked in September, eighteen hundred and thirty-one.

Again, the execution was against the proper goods and chattels of Arrington, and was not in conformity with the decree, and was also in favor of Hill, and against Arrington, and the sureties of the administratrix jointly.    No execution could issue, until process had been returned against the administrator.—Aik. D. 252, sec. 37, 38, 39, 40.    The execution should not have issued, until the proper returns were made.— The negroes were, by the will, to remain with the executor, until eighteen hundred and thirty-six, and the court had made a disposition of them, before that time. The decree was also for too large a sum.

*J. B. Clarke,* contra.

COLLIER, C. J.—In this case, it appears that Caleb Howell, of the county of Baldwin, died in the year eighteen hundred and twenty-four, leaving a will, which was proved and recorded, under the directions of the Orphans' court of that county, in July of the same year.

In August, eighteen hundred and twenty-seven, letters of administration, with the will annexed, were issued by the county court of Wilcox, to Lucy M. Howell and Benjamin Williamson, who qualified, by giving bond, &c.    Afterward, in July, eighteen hundred and twenty-eight, Benjamin Williamson resigned his administration, and Lucy M. continued sole ad-

ministratrix, up to the ninth day of March, eighteen hundred and thirty, when she intermarried with Joseph Arrington, who afterwards became administrator in her right. In December, eighteen hundred and thirty-four, one of the legatees, under the will of Caleb Howell, applied to the Orphans' Court of Wilcox, to compel Lucy M., and her husband, as administrator in her right, to settle their administration accounts; whereupon notices were issued and served upon Lucy M. and Joseph, and such further proceedings had, that that court, on the third Monday in May, eighteen hundred and thirty-five, rendered a final decree against Joseph Arrington alone, and in favor of each legatee, under the will of Caleb Howell, for the sums severally supposed to be due them.

From the decree in favor of the defendant in error, Arrington sued out a writ of error, returnable to the Circuit court of Wilcox, for the successful prosecution of which, Benjamin Williamson and Thomas Dunn executed a bond: and, the judgment of the County court being affirmed, the Circuit court rendered judgment against Williamson, Dunn and Arrington. To revise this judgment they have prosecuted a writ of error to this court, and here re-assign the errors that were assigned in the Circuit court.

The first and second assignments, suppose the grant of administration to Lucy M. Howell, and Benjamin Williamson, to have been void,—first, because the Orphans' court of Wilcox had no jurisdiction. Second, because the will of Caleb Howell provided for its own execution, in appointing an executor.

Without pretending to consider the abstract questions of law raised by these points, we think it clear, that they are not available for the plaintiffs. Joseph Arrington coming into the administration in right of his wife, can not urge the invalidity of an authority, which she had sought, and both had exercised. The jurisdiction of the Orphans' court was then immaterial-

By an acceptance and exercise of the trust, it was admitted, and it is not for the plaintiffs to controvert it. To entertain the objection, would be to allow them to take advantage of their own wrong, which the law will not tolerate.

In the third and fourth assignments it is further insisted, that the judgment is erroneous, because the notice required upon the settlement of estates, has not been given; and further, because the decree should have been in favor of the subsequent administrator.

It is not for the plaintiffs to object to the irregularity of notice, which was not intended for the advantage of the personal representative, but for the benefit of creditors, distributees, &c. The administratrix and administrator were cited, filed their accounts, and so far as they are concerned, the proceeding in this respect, is free from objection.

In regard to the decree being in favor of the legatees, this is expressly authorised by statute.* Besides, it does not appear, that there was any other representative of the estate of Caleb Howell, after the grant of administration to Lucy M. was revoked.

In the fifth and sixth assignments, the decree is further objected to, because it does not charge Lucy M. as well as her husband, Joseph Arrington, and because it is rendered for too large a sum.

By the marriage of a *feme sole* administratrix, the husband becomes joint administrator with her :† and if the husband sue or be sued, as administrator, the wife must be joined with him.‡ But, in cases where the administrator may be charged in his own right, the action lies against the husband alone.§

---

* Aikin's Digest, (first edition,) 252, sec. 37.
† 7 Mass. Rep. 510.
‡ 2 W'ms on Ex. 632; 1 Hayw. R. 16: 2 Saund. on Pl. and Ev. 572.
§ 2 Saunders on Pleading and Evidence, 572.

The present case is clearly not of the latter description. It is a proceeding against the husband, in his representative character, to which the wife was a necessary party; and if essential to its legality, that she should be joined, no decree can be regular, which does not embrace her. And for this omission, the judgment of the Circuit court is reversed: and as the administratrix is not before this court, so as to enable us to render the proper decree here, the cause is remanded.

There is nothing in the record, from which we can discover that the decree is rendered for too much.