## CARROLL AND WIFE v. BRUMBY, Adm'r.

1. A testator by his will declared, that certain of his slaves should be permitted to go to Africa, their passage to be paid, &c., but if they desired to remain subject to his daughter as they had been to him, they should be permitted to do so, but in no event to be sold, or deprived of this privilege either before or after the death of my said daughter. Should they, or any, or all, prefer not to emigrate, then and in that event, they shall in all respects be subject to my daughter, as they are to me—Held, that the slaves had not the legal capacity to choose between freedom and servitude, and that the bequest of freedom being void, the title to the slaves was vested in the daughter.

This was a proceeding in the orphans'·court of Perry county, before his honor J. P. Graham, against A. V. Brumby, administrator with the will annexed of John F. Wallis.

The legatees under the will appeared, a decree of final settlement was rendered, ascertaining the amount of monies in his hands, and a judgment was rendered for each legatee, for his proportion of the amount, but this was insufficient to pay in full their legacies. The legatees objected, that the administrator should be charged with the hire of certain slaves that belonged to John F. Wallis, deceased, and the only question was, whether the slaves were specifically bequeathed by the will of the testator to his daughter, Ann Eliza, or whether they were liable to pay the legacies. By the first clause of the will of the testator, he devised to his daughter his real estate, stock, with the dividends and rents thereon accruing. The second clause is in the following language : In relation to my kind and faithful servants, Jane Harper and her children, George Washington, Maria and Allice, Millary and her two children, Jane and Millory, and Aaron, the husband of Maria, it is my will that they be permitted to go to Africa, their passage paid, and two years support allowed them after their arrival, out of any funds belonging to my estate, not otherwise appropriated. If however, my said servants prefer to remain subject to my said daughter, as they are to me, they may be permitted to do so,

but in no event shall they be sold, or deprived of their privilege, either before or after the death of my said daughter. It is further my will, that my executors buy, if practicable, Tilly and Kora, children of said Milly, which were sold by me, the first for a supposed fault, and the other at the request of the mother, and advice of friends. Said servants, when bought, are to be allowed to accompany to Africa those now in my possession, or to remain under the control of my daughter, as they shall prefer. Should they, or any, or all, prefer not to emigrate, then, and in that event, they shall in all respects be subject to my daughter, as they are to me, who is hereby admonished to treat them kindly, and to attend to their religious instruction. Should they however remain in servitude until the death of my daughter, they must be sent to what free colony my executors may consider most advantageous.

The daughter, Ann Eliza, is in life, and holds the said slaves under the will, as a specific legacy.

The orphans' court decreed, that the administrator was not chargeable with the hire of said slaves, and that he was authorized under the will to deliver them up to the daughter, and to revise this decree, the legatees sue out this writ of error.

DAVIS, for the plaintiff, cited Trotter v. Blocker and wife, 6 Porter, 269; 2 Wms. on Ex'rs, 739, 841, 973; Jeremy's Eq. 104, and 1 Roper Leg. 149.

HOPKINS, contra.

The slaves had no capacity to take the bequest of their freedom. Trotter, adm'r, v. Blocker and wife, 6 Porter's R. 269. In that case, the testator made no disposition of the slaves, in the event of their legal incapacity to enjoy the bequest he made in their favor. As the bequest of freedom was void, the property in the slaves was not disposed of by the will, and as to them the testator died intestate.

If the statute law, at the death of the testator, had recognized the bequest of freedom as a legal one, the slaves would be entitled to their freedom. 7 Ala. Rep. 795. In the event which has happened, the legal incapacity of the slaves to

take the bequest of their freedom, the property in them is disposed of by the will to the testator's daughter.

The testator did not intend to allow his slaves but two alternatives, to migrate to Africa, or remain in bondage to his daughter. He had no legal right to offer the first, and they no capacity to accept it; but he had the right to prescribe the second, the legal effect of which is equivalent to an absolute bequst of them to his daughter.

The effect of the legal restraint upon the will of the slaves which prevented them from determining to go to Africa, is the same as if they had possessed freedom of will upon the subject, and had decided not to go there. In the latter case, they would, under the will, be the slaves of the daughter of the testator.

According to the law of the land, they are slaves, and the intention of the testator appears clearly from his will, that as long as they might be slaves after his death, they should be the slaves of his daughter.

They were not capable of willing that they would migrate to Africa, because the law determined for them, that they should not go there. Being thus detained in bondage, it must be to the person in whose favor the testator directed, by his will, that their servitude should continue while they remained in this country.

The privilege granted to the slaves by the will to go to Africa, before the death of the daughter of the testator, is void, and has no effect upon the interest given in them by the will to the daughter, in the event the privilege should not be exercised. The privilege to migrate after the death is void also, and the property of the daughter and her heirs intended to be terminated by the exercise after her death of the privilege, cannot be affected by the void permission, as it cannot be exercised.

There is a valid bequest of the slaves in the will, to the testator's daughter, because his will shows his intention to dispose of all the property he had in the slaves, and to give to his daughter so much of the interest in them as they might not take under the bequest of freedom, and all the interest that could be derived from their servitude while it endured. He directs, in conformity to this intention, that while their

bondage continues, it shall be for the benefit of his daughter. Cogbill v. Cogbill and others, 2 Henn. & Munf. Rep. 466, 509.

As there is no legal limitation of their bondage, there is no limitation of the right of the daughter to hold them in servitude for her benefit.

If the daughter were entitled to a life estate only in the slaves, the bequest is a specific one, and the slaves would not be liable to be sold, nor the administrator to be charged with the hire, to which the daughter is entitled, for the payment of the pecuniary legacies.

DARGAN, J.—The plaintiffs contend that the testator intended a legacy to the slaves, to wit, their freedom—but as the laws of this State prohibit this, and they cannot take this legacy, or bequest, for want of legal capacity ; that the testator died intestate as to his slaves, and therefore their services, and the slaves themselves, are liable to pay the legacies. If the hire of the slaves be assets for the payment of the legacies, then the slaves themselves would necessarily be so, and it is only necessary to inquire whether the slaves named in the will are subject to pay the legacies. It is certainly very clear that the testator never intended that the slaves named in his will should be sold for this purpose, for he forbids their being sold under any circumstances. It is true he did intend to give them the option of freedom or servitude, but they have not the legal capacity or power to choose—the law forbids this, (see 6th Porter, 269,) hence it is contended, that the testator died intestate as to them. But if we take the intention of the will for our guide—and this we can do when that intention does not contravene the law—we will find, that the testator intended, that if they remained in servitude, they should be subject to his daughter, as they had been to him. How had they been subject to him ? They had been subject to him as his slaves. It was then his will, that they should be subject to his daughter in servitude, as her slaves. We can give effect to this intention of the will, but we could not give effect to the intention that the slaves should be free. But suppose the law would permit the slave to accept free-

dom or not, and in the event the slave refused the bequest, then the testator willed the slave to his daughter—and the slave refused the legacy, would not the right of the daughter be incontrovertible? A testator can surely give a legacy to one, and if such one refuse to accept, then over to another. In this case, the legatee (the slave) has not capacity to accept; the law binds him to servitude, and the gift, or legacy to the daughter ought not to fail, if the slave will not, or by law cannot, accept of his freedom. In either event, they should remain in servitude, subject to the daughter as they had been to the testator—for so is the will. And if they remain in servitude, subject to the daughter as they had been to the testator, then the administrator is not responsible for their hire, nor are the slaves liable to pay the legacies.

It results from this, that there is no error in the decree of the orphans' court, and it is consequently affirmed.