| 18 | 27 |
|-----|-----|
| 103 | 597 |

# GAUNT & WIFE *vs.* TUCKER'S EXECUTORS.

1. Where property is bequeathed to one in trust for others, the trustee is regarded at law as the legatee, and his *cestuis que trust* are not necessary parties to a settlement of the administration.

2. Where the executor or administrator on final settlement claims credit for the payment by him of an account against his decedent, the mere production of a receipt, purporting to be signed by the creditor, without proof of the signature or the validity of the debt, is insufficient to authorise the allowance of the credit.

3. Proof that would be sufficient to charge the executor or administrator in a suit against him, with the payment of a demand against his decedent, is sufficient to support his claim to such payment as a credit.

4. Where an executor or administrator receives depreciated currency in payment for property of the estate sold by him, and passes it off at par in discharge of its debts, he will not be chargeable with the difference in value of specie and the currency so received.

5. A gift by deed of a slave, on the condition that the donee shall emancipate him, vests the title absolutely in the donee, and the donor can no more revoke it, than he could a gift, to which no condition was attached.

6. The donee of a gift *mortis causa* claims directly from the donor in his life-time, and, although the subject of the gift may be liable, after the death of the donor, to the payment of his debts, it is not liable to the claims of his distributees.

7. A deed of gift, although it has not been recorded, passes the title to the donee, as against the donor and his representatives.

8. The dissent of the widow from the will of her deceased husband does not affect a power of sale given by it to the executors, for the purpose of paying the debts of the estate.

ERROR to the Orphans' Court of Limestone.

WM. H. WALKER, for the plaintiffs in error.

BRICKELL, for the defendants.

DARGAN, C. J.—Hartwell Tucker duly executed his last will, by which he bequeathed, after the payment of his debts, one-third of all his estate to his wife, one-third to James Tucker, his brother, in trust for his, James Tucker's, children, and one-third to James Tucker, in trust for the children of Burwell Tucker. The testator had no children of his own. After his death, the executors, James Tucker and Peter F. Gaunt, propounded the will for probate, which was duly proved and recorded, and letters testamentary issued to them in the usual form. The widow of the deceased afterwards dissented from the will and claimed her distributive share under the statute, and these proceedings were instituted in the Orphans' Court for the final settlement of the estate. It appeared that one of the children of Burwell Tucker, who was entitled to participate in the share given to James Tucker in trust for the children of Burwell, had died and no administration had been taken out on his estate. On this account, Gaunt, who had intermarried with the widow of the testator, objected to proceeding with the settlement, but the objection was overruled.

Gaunt & Wife v. Tucker's Ex'rs.

The general rule, it is true, is that on the final settlement of an estate all the distributees should be before the court, and if one be dead, then his representative should be a party; but in the case before us the will gives to James Tucker, one of the executors, one-third part of the estate, in trust for the children of Burwell. James Tucker is therefore the legatee at law and entitled to receive the legacy. He only need be a party on the final settlement. The Orphans' Court has no jurisdiction to compel him as trustee to distribute the share, to which the children of Burwell are entitled under the will. It can only award to him their portion, which he takes as trustee for their benefit. This objection, therefore, was properly overruled.

The executors claimed as a credit the sum of one hundred and twenty-six dollars and sixty-five cents, which they insisted they had paid to Isham Nance. The evidence of this payment consisted of an account made out against the deceased, which was sworn to by William C. Scott before a justice of the peace. They also introduced an instrument, purporting to be a receipt to them from Nance, for the payment of the money. This was all the proof in reference to the payment of this item. Gaunt and wife objected to the allowance of this sum as a credit in favor of the executors, but their objection was overruled.— When an executor or administrator renders an account for final settlement, all payments and disbursements claimed to have been made, if disputed, must be proved.—2 Lomax on Ex. 308; 2 Williams on Ex. 1266; Kellett v. Rathbun, 4 Paige, 102. It is, therefore, necessary to prove the debt, if this is disputed, and also its payment. But the mere production of an instrument purporting to be a receipt, without proof of the signature of the party signing it, is neither proof of the payment, nor of the validity of the debt against the estate. The executors should have proved the debt to be due from the deceased, and then the signature of Nance to the receipt, to have entitled themselves to a credit for this item.

The executors also claimed as a credit a sum that they had paid Dr. Adams for medical attendance during the years of 1840 and 1841. The objection to the allowance of this item was that the items of the account were not produced, when it appeared that Dr. Adams, who is now dead, had an account on his books containing the charges and items of the account—but

the executors introducing proof of the rendition of the services. by Dr. Adams, the objection was overruled. We can see no ground for this objection. Dr. Adams could have recovered of the executors upon proof of the rendition of the services, without regard to the items or charges made upon his books, and we think it very clear that proof, which would charge an executor with the payment of a debt to a creditor, must be sufficient evidence for him on a final settlement of the estate.

It was also shown that the executors, for the purpose of paying debts, sold property to the amount of eight thousand eight hundred and eighty dollars, and received in part payment of this sum over five thousand dollars in the bills of the State Bank and its branches at par, and that at the time of receiving those bills, they were at one per cent. below par; but it was also shown that the executors paid them away at par. Gaunt and wife asked that the executors be charged *with this one per cent.*, as they received *in payment of property sold* by them money which was one per cent. below par. This the court refused. We do not think it necessary to examine when or under what circumstances executors or administrators should be charged with the difference between specie and depreciated currency which they may have received in payment of debts due them in their representative character; for in the case before us they both received and paid out the Alabama bank bills at par, and which were depreciated only one per cent. The result to the estate would have been the same had they received in specie and paid in specie. The parties have suffered no injury from this act of the executors, nor did the executors make any profit thereby to themselves. The court correctly refused to charge them with this one per cent.

Gaunt and wife also moved the court to charge the executors with the value of a slave named Frederick, which belonged to the testator and remained in his possession, until a short time before his death. James Tucker, one of the executors, claimed this slave in his own right and showed that he had him in possession at the time of the testator's death. He also introduced as evidence a deed of gift, by which the testator conveyed said slave to him about a month before his death. It was, however, contended that this deed was upon a secret trust that James Tucker, the donee, should emancipate the slave, and further

that it was executed upon the understanding that if the testator recovered of the disease, which threatened his life at the time of the execution of the deed, the slave was to continue the property of the testator. To prove that these were the conditions upon which the deed was executed, the contestants offered to file interrogatories to James Tucker, the donee, and moved the court for an order requiring him to answer them. The court refused to allow the interrogatories and to compel James Tucker to answer them, and also refused to charge the executors with the value of this slave as a portion of the estate. If it had been fully proved that the deed was executed, and the slave delivered to the donee, upon one or both of these conditions, still the court should not have charged the executors with the value of this slave, nor should they have been required to bring him into the distribution as a portion of the estate. It is true, we have frequently decided that a slave is incapable of receiving his freedom by way of a legacy, (Carroll & Wife v. Brumby, adm'r, 13 Ala. 102, and cases there cited,) but it is manifest that if the owner of a slave conveys him by deed to another upon the secret trust that the donee shall emancipate the slave, the title will vest absolutely in the donee, and the donor can no more revoke such a gift than he could one to which no condition was attached. The deed executed by the testator was binding on him, although he may have intended that the donee should emancipate the slave, and being binding on him, it is equally so as against his distributees or legatees.

If it had been shown that the deed was executed upon the condition, that if the testator recovered, the slave should be returned to him as his property, still the executors could not have been charged with his value on the final settlement; for if we could consider the gift of this slave by deed as a gift *mortis causa*, still it is perfectly clear that the executors could not be compelled to account for his value to the distributees or the legatees of the testator. A donee of such a gift claims directly from the donor in his life-time, and although the subject of the gift may be liable to the payment of the debts of the donor after his death, it is entirely clear that it is not subject to the claims of distributees or legatees under the will of the testator.—1 Williams on Ex'rs, 505; Lomax on Ex'rs, vol. 1, 278.

But it is urged that as the deed has not been recorded, it is

void.    As between the donor and donee and their representa-
tives, there is no necessity for the registration of the deed.—
McRae v. Pegues, 4 Ala. 158.

In regard to the sale of those slaves, which were sold for the
purpose of paying the debts, we need only say that the will ex-
pressly authorised the executors to sell and pointed out the
mode in which the sales should be made.    The dissent of the
widow from the will could not affect the powers given to the
executors, authorising them to sell for the purpose of paying
the debts of the testator.

We must reverse the decree for the error we have pointed
out, in allowing the executors a credit of $126 $\frac{65}{100}$, which they
alleged that they had paid to Isham Nance upon a debt due to
him from the testator, and the cause must be remanded.    Upon
another trial the parties will have a full opportunity to examine
the question, whether the executors are chargeable with the
debt of one hundred and ten dollars alleged to be due to the
testator from Isham Nance, and therefore we have thought it
unnecessary to examine that question.    Let the decree be re-
versed and the cause remanded.