[Hutton v. Williams.]

# Hutton *v.* Williams.

*Bill in Equity by Ward, for Settlement of Guardian's Accounts.*

1. *Probate decree on settlement of guardian's accounts; when binding on ward.* On the settlement of a guardian's accounts in the Probate Court, made during the minority of the ward, and before the guardian's office has expired, the ward must be represented by a guardian *ad litem*, appointed by the court; otherwise the settlement is voidable, at the election of the infant, seasonably expressed, though the guardian himself can not avoid it, even on error; and neither the appearance of the infant himself in person, nor the appearance of an adult brother on his behalf, and their acquiescence in the account as stated, render the decree valid and binding on him.

2. *Parol evidence, in aid of record.*—When the record of the Probate Court, in the matter of the settlement of a guardian's accounts, fails to show the appointment and appearance of a guardian *ad litem* for the ward, the defect can not be supplied by parol proof.

3. *Burden of proof, as to credits or payments.*—On the settlement of the accounts of a guardian, as of an executor or administrator (Code of 1876, §§ 2516, 2793), the *onus* is on him to prove the correctness of payments or expenditures for which he claims credit.

4. *Rules of practice, on statement of guardian's accounts by register.*—On the settlement of a guardian's accounts in equity, the register should be directed to observe the mode of proceeding on similar settlements in the Probate Court, so far as practicable and consistent with the rules of chancery practice.

5 *Allowance to guardian for board, clothing, &c.; investment in Confederate bonds.*—Where the guardian, instead of lending out or investing the funds of his ward, which were in his hands at the commencement of the war, and hiring out the negroes, retained and used the money for his own benefit, and became himself the hirer of the slaves, he can not be allowed, in extinguishment of the debt thus incurred, to claim credits for board, clothing, and tuition of his ward, at Confederate prices; nor had he any authority to fund such debt in Confederate bonds for his ward.

6. *Medical services to hired slaves.*—In the absence of an agreement to the contrary, the hirer of slaves was bound to furnish medical attendance for them at his own expense; and hence, where a guardian hired his ward's slaves, not being able to contract with himself for exemption from this liability, he can not be allowed a credit for medical services rendered to them by himself as physician.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 22d March, 1873, by Emmett C. Hutton, against David H. Williams, his late guardian, and one Whitfield Walker, as the debtor of said Williams. The chancellor considered and treated it as a bill to surcharge and falsify the settlements of the guardian's accounts in the Probate Court of Greene, hereinafter mentioned; but this court holds that it should be treated as a bill to compel a settlement of the guardian's accounts, regardless of these settlements. The prayer of the bill was

in these words: "May it please your honor to order and decree that the said settlements and proceedings, had and made by the said Williams, as such guardian, in the said Probate Court, shall be set aside and held for naught, including conversions of solvent credits and funds into Confederate securities; or, if that is not proper, then that the said settlements and proceedings, so far as they are illegal and unauthorized, be set aside, or opened; that the said accounts and settlements may be surcharged, falsified, and corrected, so far as there are any errors or mistakes, and so far as the judge and court were illegal and unconstitutional; also, that said Williams, as such guardian as aforesaid, may be charged with and held to account for all the assets and property of your orator's estate, and for the fair and full value thereof at the time the same were received by him. And may it please your honor, also, to order, decree, and direct that an account may be taken by the register of all the property and assets of your orator's estate which came to his hands, and with which he may and ought to be charged as guardian, and be credited with only such amounts and allowances as he may be legally entitled to against your orator's estate; and also, if there be any balance for distribution in his hands as guardian, that he be required to pay the same into this court, and that the same, when paid, be decreed and distributed according to law." An injunction against Walker, as the debtor of Williams, with other appropriate relief to intercept and subject his indebtedness, was prayed; and the general prayer was added, for other and further relief.

The bill alleged that said Williams was appointed guardian of the complainant, by the Probate Court of said county, on the 2d January, 1854, and duly qualified, gave bond, and entered on the duties of the office, and that he afterwards made the following settlements with said court: an annual settlement on the 13th May, 1856, by which it was ascertained that, on the 1st January, 1856, there was a balance in his hands, due to his ward, of $496.95; another annual settlement on the 14th July, 1857, when the balance was $1,517.79, due January 1, 1857; another, on the 13th April, 1858, when the balance was $3,142.23; another, on the 12th August, 1859, when the balance was $3,293.28; another, on the 10th January, 1861, when the balance was $3,110.59; another, on the 6th December, 1862, when the balance was $3,941.64; another, on the 5th March, 1864, when the balance was $3,434.78; and a final settlement, on the 5th February, 1866, when he charged himself with only $1,434.78, as the balance due on his last annual settlement, instead of

[Hutton v. Williams.]

$3,434.78. The bill alleged, also, that the complainant was not represented by a guardian *ad litem* on any of these settlements, and the same were null and void as to him; that the guardian claimed and was allowed "sundry credits, which were exorbitant, illegal, unjust, and a fraud upon complainant," but which were not specified; that he also failed to charge himself with divers sums which he had received, or ought to have received, and with which he was properly chargeable; that the complainant attained his majority on the 4th May, 1871, and had never in any manner ratified these settlements; also, that the guardian had himself hired the complainant's slaves during the war, and had never accounted for the reasonable value of their hires; that he had wasted the assets of his ward's estate, had converted the funds into worthless Confederate securities, and had charged all his expenditures in Confederate money; that he was a non-resident, and had no property or effects, except a debt due to him from Walker, &c.

Walker answered, admitting an indebtedness to Williams, and specifying property which belonged to him. Williams also answered, denying the charges of fraud and misconduct; denying, also, that he was a non-resident; pleading the final settlement in bar of the relief sought by the bill; alleging that, on a full accounting, the complainant was largely indebted to him; and demurring to the bill for want of equity. He also filed a cross-bill, setting up matters of indebtedness to him on the part of the complainant, asking an account, &c. As to the settlements in the Probate Court, he alleged that they were in all respects legal, regular, and valid, and that the complainant was personally present, attended by an adult brother, at the final settlement on the 5th February, 1866, and acquiesced in its correctness.

The chancellor overruled the demurrer to the bill, though holding its allegations defective as a bill to surcharge and falsify the settlements in the Probate Court; and on final hearing, on pleadings and proof, considering it as a bill to surcharge and falsify, held that the only error shown to have occurred on these settlements was the omission of one year's interest, $230, which he ordered to be corrected, and allowed as a debit against the account sought by the cross-bill. The complainant appeals from this decree, and here assigns it as error.

WATTS & SONS, for appellant.—1. At the time of the alleged final settlement, in February, 1866, the ward was only about fifteen years old, and no guardian *ad litem* was appointed to represent him on the settlement. The settle-

ment was simply an accounting by the guardian with himself; and however conclusive it may be on him, it is void as to the ward.—*Hollis v. Caughman*, 22 Ala. 478; *Rhodes v. Turner*, 21 Ala. 210; *Frierson v. Travis*, 39 Ala. 150; *Searcy v. Holmes*, 43 Ala. 608. For the same reason, the annual settlements are also void. The complainant was entitled to a full account and settlement of the guardianship, entirely disregarding these so-called settlements.

2. As to the Confederate transactions involved in the account, the receipts and expenditures in Confederate money, and the alleged investment of $2,000 in Confederate bonds, the appellant relies on *Lockhart v. Horn*, 17 Wallace, 570; *De Jarnette v. De Jarnette*, 41 Ala. 708; *Houston v. Deloach*, 43 Ala. 365; *Moody v. Bibb*, 50 Ala. 245; *Newman v. Reed*, 50 Ala. 297; *Corbitt v. Carroll*, 50 Ala. 315.

SNEDECOR & COCKRELL, with W. COLEMAN, *contra*.—The final settlement was in all respects regular, except in the failure to appoint a guardian *ad litem* for the ward; an omission which rendered the decree voidable only, but not void. *Kavanaugh v. Thompson*, 16 Ala. 817; *Jenkins v. Jenkins*, 16 Ala. 693; *Cole v. Connelly*, 16 Ala. 280; *Wyman v. Campbell*, 6 Porter, 240; *Bruce v. Strickland*, 47 Ala. 196; *Frierson v. Travis*, 39 Ala. 150; 22 Ala. 478; 21 Ala. 522. The final settlement not being void, the complainant could only surcharge and falsify it by specifying and proving particular errors and mistakes.—*Cowan v. Jones*, 27 Ala. 325; *Coffin v. McCullough*, 30 Ala. 108; 1 Daniell's Ch. Pl. 424; 2 *Ib*. 765. If the bill be held sufficient for this purpose, it is submitted that no error is shown, except as to the single item allowed by the chancellor.

BRICKELL, C. J.—The question first arising in this case is the effect of the final settlement of the appellee, Williams, as guardian of the appellant, made in the Court of Probate, on the 6th day of February, 1866. If that settlement is valid and operative against the complainant—if the court had jurisdiction of his person, as it certainly had of the subject-matter—the decree rendered thereon is conclusive, until impeached for fraud, or for errors occurring without his fault or neglect. But, if it is not valid against him, as a judicial proceeding—if the court, though having jurisdiction of the subject-matter, was without jurisdiction of his person; and he has not had the opportunity, which the law affords him, to be heard to defend against it—without assailing it for fraud, or for errors which may have intervened, he has the right to demand from the guardian a settlement of

his accounts, as if that proceeding had not been commenced and ripened into what purports to be a final decree.

.An indispensable element of the conclusiveness of a final settlement of a guardian, made during the infancy of the ward, is the representation of the ward by a guardian *ad litem* of the appointment of the court, if the office of the general guardian has not expired. The office having expired, and there being a regular guardian appearing and representing the ward, dispenses with the necessity of appointing a guardian *ad litem*, the record disclosing the appearance and representation. A settlement without the appointment of such guardian, and without affording him the opportunity of appearing and contesting the accounts of the guardian, on behalf of the ward, is *ex parte*, and, at the election of the ward, may be disregarded. It is not evidence against him, and is not a bar to any proceeding he may subsequently commence for a settlement of the guardianship.—*Frierson v. Travis*, 39 Ala. 150; *Wilson v. Wilson*, 18 Ala. 176; *McCreeliss v. Hinkle*, 17 Ala. 459; *King v. Collins*, 21 Ala, 363; *Cunningham v. Pool*, 9 Ala. 615. The statute imposes it as a duty on the Court of Probate, to appoint such guardian (Code of 1876, §§ 2510, 2793); and when the court proceeds without the appointment, and without a legal representation of the infant, as to him, if he elects so to treat it, the settlement is *coram non judice*. The settlement is not, properly speaking, *void*; it is *voidable*, at the election of the infant, seasonably expressed. The guardian, the *actor* in the proceedings, of whom the court has jurisdiction, and who was bound to conduct them regularly, can not, even on error, avoid it.—*Kavanaugh v. Thompson*, 16 Ala. 817; *Treadwell v. Burden*, 8 Ala. 660; *Davis v. Davis*, 6 Ala. 611; *Williamson v. Hill*, 6 Porter, 184. The right to treat the settlement as invalid, belongs alone to the infant, and may be lost by him, if he is not diligent in exercising it.

The bill avers, and the averment is supported by the record of the Court of Probate, which is exhibited, that on the final settlement of the accounts of the guardian, and on the preceding annual settlements, the appellant, then in infancy, was not represented by a guardian *ad litem*. There was in fact, so far as is shown, no representation for him. The answer avers the presence of the appellant, and of an adult brother, at the final settlement, and an examination by them of the accounts and vouchers, and an acquiescence in their correctness. These facts may be true, but they cannot render the settlement valid. The brother was without authority to bind the appellant, and, without the appointment of the court, could not have intervened to contest the accounts

and vouchers on his behalf. The appellant, an infant, could not, by mere acquiescence, or by direct acknowledgment, in the absence of intentional fraud, affect or impair the right to treat the settlement as void. Nor can the defect in the jurisdiction of the court, which appears of record, be cured or supplied by facts resting in parol.

The settlements not being entitled to the dignity of judicial proceedings—not *res adjudicata*, and not evidence against the appellant—it is not material what are the imperfections of the bill, if its equity depended on the averment of fraud to re-open them, or of errors to surcharge and falsify the accounts. It is, properly, a bill to compel the guardian to an account and settlement, and should have been so regarded by the chancellor.—*Frierson v. Travis, supra.*

3. When a guardian, or other trustee, claims a credit for moneys expended, the *onus* of proving the correctness of the credit, devolves on him.—*Pearson v. Darrington,* 32 Ala. 227 ; *Gantt v. Tucker,* 18 Ala. 27 ; *Savage v. Benham,* 11 Ala. 49. The statute substantially declares the rule in reference to settlements in the Court of Probate by executors or administrators (Code of 1876, § 2516) ; and declares that settlements of guardians must be governed by the law applicable to the settlements of executors or administrators.—*Ib.* § 2793. Regarding the bill as dependent for its equity on the averment of fraud to re-open the settlements, or of errors to correct the accounts, the chancellor seems to have treated the settlements and accounts as evidence against the appellant, proving themselves, except so far as he had impeached their correctness by averment and proof. The burden of proof was thus shifted from the guardian to the appellant, and an error committed fatal to the decree. These accounts and settlements were not evidence against the appellant, for any purpose. A reference should have been directed to the register, to take and state an account of the guardianship.

4. In executing the reference, the register should have been directed to observe, as far as practicable, the mode of proceeding on settlements in the Court of Probate. The practice has been, and it is convenient, for the Court of Chancery, when it takes jurisdiction of the settlement of an administration originating in the Court of Probate, to apply the statutes regulating the mode of proceeding in the Court of Probate, as far as is practicable, and is consistent with its own rules of practice. The right of the complainant to an account being clear—the relation of the guardian and ward not being disputed—and no question arising which ought to have been settled by the chancellor, before a reference—the whole case resolving itself into matters of account—an order

of reference to the register should have been made. The guardian should have been ordered to file, within a specified time, his accounts and vouchers, for a settlement. Notice should have been directed to the complainant, of the filing of the accounts and vouchers; and he should have been ordered, within a limited time, to file objections to them. The register should have been ordered then to proceed, and audit and state the accounts and vouchers, and report the result to the chancellor; the parties being allowed the right of exception to the report of the register, and having notice of the time and place of auditing and stating the accounts, with the right of introducing evidence.

5. In the present state of the record, we do not deem it proper to consider many of the matters of account which may arise on the reference to the register. The guardian seems to claim credit for large expenditures made during the war, in boarding, clothing, and tuition, for the ward. These expenditures were made in Confederate treasury-notes; and the extent to which credits shall be allowed is a matter of controversy between the parties, and we feel bound not to defer its decision. The indication in the present record is, that the guardian did not loan, or otherwise invest the moneys of the ward—that he retained and used them for his own benefit; that he became the principal hirer annually of the ward's slaves, and was the largest, if not the only debtor to the ward. The guardian can not be allowed, in extinguishment of his own debt, to claim credits for these expenditures, at their nominal amount. The value of the board, or clothing, or tuition, not in the uncertain, fluctuating currency of the war, but in the currency of times of peace, is the extent of the credit to which he is entitled. Nor had the guardian authority to fund in Confederate securities the debt due from himself to the ward.

6. The guardian seems to have obtained credit on the settlements in the Court of Probate, for medical services rendered by himself, as a physician, to slaves of the ward he had hired. The law was, in the absence of an agreement to the contrary, the hirer was bound to furnish, at his own expense, the necessary medical attendance to hired slaves.— *Gibson v. Andrews*, 4 Ala. 66. The guardian could not with himself agree to vary this principle of law, and credit for such services should not be allowed him.—*Owen v. Peebles*, 42 Ala. 338.

Without considering any other question, for the errors we have pointed out, the decree must be reversed, and the cause remanded, for further proceedings in conformity to this opinion.