## A. E. Foxworth, Admr., *v.* Hugh Bullock et ux., et al.

1. VENDOR'S LIEN—WAIVER OF LEIN BY OTHER SECURITY.—In a sale of land the vendor having taken a note with personal security, it would be inferred that the vendor's lien was abandoned.

2. SALE OF PERSONAL PROPERTY—NO LIEN FOR PURCHASE MONEY.—As to personal effects the law raises no lien or charge upon them for the price after delivery to the vendee.

3. MARRIED WOMEN—COVERTURE BAR TO AN ACTION ON A PROMISSORY NOTE.—Coverture is a bar to recovery on a promissory note given by a married woman for property bought on a credit.

4. SAME—SECURITIES ON WIFE'S NOTE FOR PURCHASE MONEY—CASE AT BAR.—Where a married woman bought property on a credit and gave her promissory note with her husband and brother-in-law as sureties thereon for the purchase money, the note is void as to her, and good as to them, and the wife becomes the recipient of the title, while others incur the duty of paying the price.

5. SAME—RIGHTS OF VENDOR ON THE PLEA OF COVERTURE.—If a vendor is defeated of his money because of coverture, he would have the right to be restored his property if *in esse*, or to a sale of the property to pay the debt; but for any deficit of full satisfaction, he would have no claim on the married woman or on her separate property.

6. ADMINISTRATOR NOT ENTITLED IN THE FIRST INSTANCE TO LANDS AND TENEMENTS.— The administrator has neither title nor interest in the lands and tenements of his intestate, and cannot intermeddle with them except the contingency has arisen when he can deal with them as assets for the creditors.

7. BILL IN CHANCERY—PARTIES—RESCISSION OF SALE OF LANDS.—The heirs and devisees are necessary parties to a bill for vacating a sale of land by the deceased.

8. FRAUD VITIATES EVERYTHING.

9. FRAUD—WHAT IS FRAUD—SUFFICIENT FOR A RESCISSION OF A CONTRACT—CASE AT BAR.—If a vendor, in selling land to a married woman on a credit, take her promissory note for the purchase money, with two securities, who afterwards turn out insolvent, it is no ground for equitable relief, because he had a right to carve out his own security, and he took a worthless one, it was his folly. But if, in the same transaction, the wife and securities, knowing the insolvency of the latter, represented to the vendor that they were solvent, and he, confiding in such representations, made the sale and took the security, it is fraud, and chancery will rescind the sale.

10. RESCISSION OF A CONTRACT FOR FRAUD—LACHES.—The right to sue for a rescis-. sion of a contract on the ground of fraud is much weakened by a delay in bringing the suit to rescind.

Appeal from the chancery court of Marion county. Mc-Millan, J.

The facts appear in the opinion of the court.

*Bentonville Taylor*, for appellant.

1st. It has always been held inequitable that a vendee should retain property without paying the purchase money; and this doctrine extends, by statute, so far as to forbid the retention of a homestead exemption in property not paid for, and declares the same to be subject to execution. Rev. Code of 1857, 530, art. 284.

2d. But this property was fraudulently assigned, hence this court will cancel the title.

· 3d. It is settled that a demurrer to a bill charging fraud, must be overruled; the fraud must be answered, and the demurrer be interposed to other parts of the bill.

4th. As to non-joinder of heirs-at-law, it is sufficient to say that the bill does not show that Jordan left any heirs-at-law, but it does show he left a will, and the court will presume if there had been heirs to inherit the land, that the defendant would have filed a plea, alleging that Jordan left heirs, who should have been made parties complainant; and if there were heirs, the demurrer, which raises only questions of law, could not set up such question of fact.

5th. As to the point made by defendant, that complainant should have tendered to Mrs. Bullock her note, and thus have placed her in *statu quo*, it is sufficient to say that the note, under the facts alleged, is void, an absolute nullity as to her. Then why tender to her blank paper? It is useless to do a foolish thing. And again, the court will not relieve her against her own fraud, but will leave her where it finds her.

The only relief sought is against Mrs. Bullock. Can her bill, if she file one, setting out her own fraudulent procurance of the conveyance to her, and tendering back the property,

and praying a cancellation of the note be sustained? We answer no! 1st, because in such a bill, alleging her own fraud, she shows, by reason of the fraud, she is not entitled to any relief. She would come into court with unclean hands; and she would show that the note, as to her, is void and null, and, therefore, could never injure her, hence her bill would be dismissed on both grounds. Then, if she, in equity, is not entitled, on her own bill, to a re-delivery or cancellation of the note, why should Jordan, administrator, in the present bill at bar, tender the note to her.

As to the necessity of tendering back, in the bill, to her, the two hundred dollars cash paid by her, we answer, that the bill shows she has consumed, sold, etc., personal property of more value than two hundred dollars; besides, she has used the lands for several years; hence, she has a co-equitable right to demand the return of the two hundred dollars.

Counsel for defendant agree that a parol agreement to recover the property, to vendor, is a nullity; to this I answer, that the agreement to recovery and redeliver the property, on default of payment, is good as to the personalty, does not come within the statute of frauds. If this parol agreement was void as to the land, under the statute of frauds, it was good as to the personalty; when a demurrer extends to the whole bill, which is good as to the personalty and bad as to the land, it must be overruled.

Counsel for Mrs. Bullock say she has not plead coverture to a suit on the note at law; and until she pleads coverture we have no ground of relief in equity, by rescission of contract, etc.

· To this we answer, 1st. We allege she refuses to pay; 2d. That she can plead coverture at law in bar of suit on the note. And when she refuses to pay, we presume she intends to plead coverture if sued at law. But why stultify ourself by bringing a suit when, by rule of law, no recovery can be had.

The effect of defendant's position is to the effect that " she may sleep on her arms;" that she may not make her defense

at law; that her counsel may be ignorant of the fact that a plea of coverture in a court of law will bar a recovery on the note; but this court will not violently presume, in face of the facts alleged in the bill, that Mrs. Bullock is over conscientious, or her solicitor ignorant of the law regarding the rights of *femes covert.*

The court will only consider whether the holder of the note can legally recover at law a judgment against her, in the event that she should use and exercise her legal right to plead her coverture.

In conclusion, can a married woman purchase lands on a credit, and retain the land without paying the purchase money? Her coverture is intended to protect her against the scheming intrigues of others; not a weapon to aid her in the practices of fraud; coverture is no defense against charges of fraud. While coverture protects her against robbery and rapacity, it does not constitute to her a general license to rob the community. It does not, by common law or by statute, protect her title acquired by fraud or force, or give her any unfair advantage over others.

If one principle is better settled than another, it is that neither coverture nor infancy is a fortress in which frauds are licensed and made lawful, and that it is only a protection against the overruling rapacity of others.

Now, in conclusion, we say that, under the provisions of the Code of 1857, the title to the real and personal estate acquired by Mrs. Bullock, by reason of her coverture, is absolutely void, she not being authorized by law to purchase the same on a credit, and the title, though passed to her in form, yet never passed in fact out of Jordan, and the administrator has both at law and equity a right to demand the immediate possession of the property; though this would be inequitable if she should pay for the same.

We say her title is absolutely void, because it is contrary to, and in violation of the public policy of this state, as declared by the common law, and the statute of 1857. Any contract made in violation of the public policy of the state,

is absolutely void, and if it be a penal violation of public policy, the courts leave them in the condition in which it finds them; but if not penal, then the courts will adjust and settle the equities between the parties to the contract. But no penalty is attached to the violation of this rule of public policy laid down by the statute, when they are not in *pari delicto.*

*J. B. Chrisman,* for appellee.

I make no comment and cite no authority on that portion of the bill which sets up the cotemporaneous parol agreement that the acknowedged and recorded deed to the property should be treated as a nullity. The demurrer to the bill does not have the effect of admitting such pleading, and no court would treat that part of the bill as confessed, even if the defendant failed and refused to answer.

It would be a piece of presumption to argue that the chancery court was without jurisdiction or authority to invest the administrator or executor with the title to the lands of the deceased, even if they had the power to rescind the contract. The heirs are parties to the record and do not complain.

There are several reasons why the court could not rescind the contract as to personalty, at the solicitation of the administrator: 1st. Because he applies too late. See Ayers v. Mitchell, 3 S. & M. 683 ; Fry on Specific Performance, 409, and authorities cited; 2d. Because the parties to whom she transferred the personalty are not made parties here; 3d. Because the contract was entire and the rescision must be entire, if at all; 4th. The complainant does not propose to put her in *statu quo,* by tendering back the amount paid and surrendering up the note.

The bill charges that Mrs. Bullock refuses to pay. Why does she refuse to pay ? It is not pretended that she interposes the plea of coverture. Her objection to paying may be that she has already paid or that there is a failure of consideration. If these or either of them be her defense, this court

has no power to try such issue. It will not be presumed that she objects to pay on account of her coverture, or interposes that defense in the absence of such allegation in the bill. Complainants have an unembarrassed remedy at law, in the absence of such plea.

But the view on which I rested this case in the court below, and the true view is, that Jordan made this contract with a full knowedge of the law that the married woman had no right to make such contract or to bind herself. That the husband and son are the principals and it is their debt; the consideration to them being, that Jordan should make her a deed to the property.

There being nothing to prevent her acquisition and ownership of the property, the statute in fact having provided that she may acquire property in this way, she was invested with a good and complete title, and it cannot be taken from her to pay the debts of the husband and the son.

In no possible aspect of the case can this bill stand, and that the judgment of the court below will be sustained I entertain no doubt.

SIMRALL, J.:

Jas. A Jordan (the intestate of the plaintiff in error), on the 17th day of August, 1866, was the owner of certain lands, stock, and other effects, conveyed to him on that day by Hugh Bullock and Caroline M. Bullock, his wife, for $2,750. On the 18th of the following September, the said Caroline M. Bullock, purchased back from said Jordan, the same property, for the same price, and took a deed for the land, and bill of sale for the personal effects, and with her husband and son, Joel J. Bullock, made and delivered to Jordan a joint and several promissory note, at twelve months after date payable in specie, at ten per cent. interest. The deed is dated 18th of October. The bill alleges, " that at the time of the sale, the said defendants were confederated and combined to defraud said Jordan, and they fraudulently induced him to believe that said Hugh Bullock and Joel J. Bullock were solvent, able and willing to pay the note and interest," and

moreover, it was understood and agreed, if said debt was not promptly paid, the sale should be treated for naught and cancelled.

The prayer is that the sale and conveyances be cancelled; that all the property be re-conveyed and delivered to the administrator, or failing in that, that the debt be declared a charge on the property, and that it be sold in satisfaction of the debt; and for general relief.

The courts cannot make contracts or provide securities for parties. Judicial duty is to enforce, or give redress for non-performance or breaches, or relieve from unconscientious bargains according to the exigencies of particular cases. It is incident to the dominion of ownership, that the proprietor may dispose of his property on such terms as he pleases. If he sells on a credit, it is with him to carve out such securtiy as he chooses to rely upon. The law implies a lien on land sold for security of the purchase money. If, however, the vendor takes other and independent security. he will be considered as waiving the lien. In so far as the land is an element in the sale by Jordan to Mrs. Bullock, having taken a note with personal security, it would be inferred that the vendor's lien was abandoned. As to the personal effects, the law raised, or created, no lien or charge upon them for the price, so that the complainant does not show that he has any specific claim on the property. We held in the case of Whitworth v. Carter, 43 Miss., 61, that a married woman could not bind herself by promissory note, or otherwise, to pay for property bought upon a credit. That her coverture was a bar to a recovery at law upon the note. But if other parties joined with her as sureties for the price, they could not rely upon her personal disability to relieve them. It follows, then, that although the promissory note was avoidable, or *nudum pactum* as to Mrs. Bullock, yet it was obligotory upon her husband and Joel Bullock. It must be taken that Jordan, the vendor, was aware that the wife could incur no legal liability by signing the note, and that he trusted to the credit and responsibility of the other makers of the paper. It is the case

then, where the wife, by the terms of the contract becomes the recipient of the title, and others incur the duty of paying the price.

We would not have the inference deduced from these observations, or the reasoning in any former adjudication, that a married woman can purchase on a credit, and when called upon for payment, set up her coverture in avoidance of the debt, and at the same time, retain the property. This would be to pervert her disability, which is her shield and protection, to be used as an instrumentality of fraud and injustice. If the vendor is defeated of his money, because of the coverture, he would have the right to be restored to his property, if *in esse*, or to a sale of the property to pay the debt, but for any deficit of full satisfaction would have no claim on the married woman, or her separate property.

But this is an entire contract, a sale of land and personal effects; to be sure, the land and the several items of personal effects are segregated as to price, and the personal effects may not have been the inducement to buy the land, and *vice versa*. But the bill seeks, either a rescission of the entire contract, or that the entire property be chargeable with the debt, and sold for its satisfaction. Now it is axiomatic in our jurisprudence, that the administrator has neither title nor interest in the lands and tenements of his intestate, and cannot intermeddle with them, except the contingency has arisen, when he may deal with them as assets for the creditors. It is not so much as averred in the bill, that the personal estate of Jordan has been exhausted, or that he is insolvent, and therefore a necessity has arisen that he should take hold of realty. The whole interest in a rescission of the contract as to the lands, resides in the heirs or devisees, and they are necessary parties to a bill for vacating a sale on the ground of fraud and misrepresentation, or for any other reason.

If Jordan was induced to sell to Mrs. Bullock, on the representation by her and her sureties on the note, or the latter alone, that they were solvent and able to pay the debt at

maturity, and because of such representations, forebore to reserve a lien, or take a mortgage, and delivered by them, relying upon their truth, so far as to make no further inquiry; and if, also, he had no knowledge of their pecuniary circumstances; and if, as stated in the bill, they had combined and conspired to delude and deceive him, and defraud him of his property, then it would be within the plain jurisdiction of equity, to deliver him from the snare, and restore him his property.

Fraud vitiates everything which it enters; all bonds, mortgages, judgments, conveyances had, obtained, and made, through covin and fraud, are void—void at the common law. No matter what shifts and devices are resorted to, if the owner, by circumvention and deceit and imposition, is entrapped into a contract, or is induced to part with his property, he shall be relieved. But the principle must not be carried beyond its just limits, because the purchaser and his sureties are insolvent, that of itself will not suffice to cancel the sale. The vendor can carry out and prescribe his own security. If he parts with his property, with a weak security, or none at all, it is his own folly; it is his duty to inform himself, and judge of its sufficiency and availability.

Mr. Justice Story says, "It is a very old axiom of equity, that if a representation is made to another person going to deal in a matter of interest, upon the faith of that representation, the former shall make the representation good, if he knows it to be false. Story's Eq. Jr., § 191. In Neville v. Wilkinson, 1 Brown's Ch. R., 146, Lord Shelton declared, "If a man, upon a treaty for any contract, will make a false representation, by means of which he puts the party bargaining under a mistake, it is a fraud." So, in Hall v. Thompson, 1 S. & M., 82, Sharkey, C. J., declared, "It is not the mere opportunity to examine, which relieves the other party from the duty to disclose; if the vendee reposes confidence in the vendor, and does not examine for himself, the vendor will be bound for all statements and concealments." Also, Oswald v. McGehee, 28 Miss., 351. The doctrine would seem to be

this : if these parties, induced Jordan, by their representations, to sell to Mrs. Bullock, on the assurance that they were solvent and able to pay, and he, without inquiry or investigation, trusted to these statements, and yielding his judgment to implicit belief and confidence, acted ; and if, also, they were irresponsible, and knew it, then it was an imposition and fraud, from which he ought to be relieved; and proper parties, as his heirs or devisees, and his administrators, who succeeded to his rights, can sustain such a bill. This is the only aspect of the bill in which there is equity. But that view of it is much weakened by the delay in bringing the suit ; two years is a long time to live by, and then sue for a rescission on the score of fraud; but, inasmuch as the justice of the case may be better attained by giving the heirs or devisees an opportunity to become parties complainant, and that the bill may be amended, charging the fraud, with more distinctness, and what influence the representations of the defendants had in inducing the sale.

We affirm the decree of the chancellor sustaining the demurrer to the bill, but remand the cause with permission for the amendments we have suggested to be made at the next term of the chancery court, otherwise, that the bill be dismissed.