CASE 26—PETITION EQUITY—APRIL 20.

# Robinson, &c. v. Robinson's trustee, &c.

### APPEAL FROM GARRARD CIRCUIT COURT.

1. OBJECTION TO SALE BECAUSE OF BY-BIDDING MAY BE WAIVED.— *Where a purchaser at a commissioner's sale charged that there had been by-bidding,* but after examination proceeded to execute the sale bonds, he was held under the circumstances to have waived his objection.

2. SALE SUBJECT TO DOWER.—Although a judgment directing a sale of the land of the debtor fails to specify that it be made subject to the contingent right of dower in his wife, if she has such an interest, the commissioner should so sell the land, and the purchaser will take subject to her interest.

3. IT IS NOT NECESSARY THAT ALL THE CREDITORS SHOULD BE MADE PARTIES to a suit, by the trustee for the benefit of creditors, to sell land for the payment of debts.

4. A MARRIED WOMAN CAN NOT BIND HERSELF AS THE PURCHASER of land at commissioner's sale, even though she appear in court, consent to the confirmation, and pay part of the price.
   *The contract of a feme covert,* unless in regard to her separate estate, is not only voidable, but absolutely void.

5. MARRIED WOMEN CAN NOT RATIFY THEIR CONTRACTS ON THE REMOVAL OF THEIR DISABILITIES, like infants, whose contracts are voidable only.
   *But a feme covert must make a new contract* after becoming *discovert* for the reason that the first contract was absolutely void.

6. ONE PURCHASING PROPERTY JOINTLY WITH A MARRIED WOMAN at commissioner's or other sale *is bound* like one becoming surety for her, although the sale be void as to her.

R. M. & W. O. BRADLEY,  
A. DUVALL, . . . . . } . . . . . For Appellants,

CITED

Civil Code, sections 545, 35, 49.  
General Statutes, sec. 13, p. 586.  
9 Bush, 665, Lawless v. Barger, &c.  
4 Bush, 585, Dunn v. Lancaster.  
3 Bush, 660, Hughes's adm'r v. Brown, &c.

6 Bush, 542, Thatcher, &c. v. Cannon, &c.
8 Bush, 474, American Contract Co. v. Cross.
3 Dana, 297, Miller v. Shackleford.
3 Bibb, 497, Brown's adm'r v. Langford.
5 Littell, 77.
18 B. Mon. 223, Hortsman v. Cov. & Lex. R. R. Co.

G. W. DUNLAP, . . . . . . . . . . . For Appellees,

CITED

31 Iowa, —, Chamberlin v. Robertson.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This is a proceeding in equity to set aside a sale of the Camp Dick Robinson farm, sold on the petition of R. M. Robinson's trustee, against R. M. Robinson and his creditors. The land was purchased by the wife of R. M. Robinson and George H. Dobyns. The grounds relied on for annulling the sale by the purchasers are:

*First*—Fraud in the sale by means of puffing or by-bidding, on account of which, as the appellants allege, they were induced to give an exorbitant price for the land.

*Second*—That process was not served on many of Robinson's creditors, who were made defendants to the action by the trustee for the sale of the land.

*Third*—Because Mrs. M. P. Robinson, one of the purchasers, was a *feme covert* at the time of the purchase and execution of the sale notes.

Mrs. Robinson (her husband being now dead) also claims dower in the land, or that the value of her dower be deducted from the purchase-price. The land sold for $100 per acre.

There is no such evidence of fraud or by-bidding at the sale conducted by the commissioner as would authorize this court to set it aside. The weight of the evidence conduces to show that the land was not worth exceeding eighty or eighty-five dollars per acre, but several well-informed and reliable witnesses place a much higher estimate upon it. The auctioneer

crying the sale gives the manner in which the bids were cried, and it is not unreasonable to infer that the silence of those who, after having publicly announced their bids, permitted the auctioneer to still increase their offers, was equivalent to sanctioning his acts in that regard. But conceding that this is mere conjecture, after the land had been knocked off to the appellants, diligent inquiry seems to have been made by them, and particularly their attorney, in order to ascertain the competing bidder with the appellants. They were told that Moore only bid eighty dollars, and not finding any other higher or better bidder, they still were not only willing to ratify their bid, but executed then and there their notes for the purchase-money. They had all the information in regard to the mode of conducting the sale then that they have now, and executed the obligations with their eyes open.

Buford had unlimited authority to make the purchase for appellants, and if they had been deceived in this matter it is their fault or that of their agent, and not that of the auctioneer. The auctioneer swears that the bids were made, and that some stranger ran the land up to $100; in this he is sustained by the testimony of Jones Adams, and with the still stronger proof that these parties executed the notes after they had made inquiry, and with a full knowledge of the facts. Besides, it is shown that after the sale had been made neither of the parties was willing to cancel the purchase, but moved the court to reduce the bid from $100 to eighty dollars.

Their motion to set aside the sale was withdrawn, and they relied alone upon the motion to reduce the amount bid; and not only so, after this motion had been overruled they paid nearly ten thousand dollars on the land. The whole evidence shows their intention was not to abandon their purchase, but to hold on to the land notwithstanding their knowledge of the existence of all the facts connected with the sale. The sale will not be disturbed on this ground, for the reason that there is no

satisfactory proof that the bids against appellants were in bad faith, and for the additional reason that they elected to abide by their purchase after making inquiry and obtaining the knowledge of all the facts pertaining to the bidding. The sale was made subject to the contingent right of dower.

This was known to all the parties, or, if not, was publicly announced more than once; and although there was no specific direction in the judgment to sell the property in this way, the commissioner could have sold it or had no right to sell it in any other manner. It was the interest of the vendor Robinson that was directed to be sold in the land. This was all that could have been sold, and the party buying took subject to this contingent right.

Nor was it necessary that all the creditors of Robinson should have been made parties to the equity proceedings to sell the land. The legal title was in the trustee; he held for the benefit of the creditors. The chancellor had taken possession of it in order to apply the proceeds of sale to the payment of debts. Many of the creditors were before the court; all were required to appear before the commissioner, and it would hardly be expected that in the settlement of such an estate all the creditors could be known to the trustee. To invalidate a sale on this ground, or to require every creditor to be made a defendant, would retard the settlement of such estates, and in many instances by protracted litigation deprive both debtor and creditor of all interest by appropriating the proceeds of sale to the payment of unnecessary costs. Such has never been the practice in this class of cases.

The other errors alluded to in the argument of counsel with reference to the original judgment were heretofore disposed of by this court on the appeal of one of the creditors. As to the appellant M. P. Robinson, it is insisted that she, being a *feme covert*, had no power to bind herself by this contract of purchase; and in this position we concur with counsel. It is

shown that she was a *feme covert* at the time the purchase was made and the notes executed, and also at the time the motion was made in the case after the purchase to scale the bidding. The contract of a *feme covert*, unless in regard to her separate estate, is not only voidable, but absolutely void. She has no power to bind herself by any such agreement as was made in this case, nor can the acts of her husband bind her. It does not appear that she was in court when the motion was made to reduce the bid, but that she was represented by her husband and by her co-purchaser, Dobyns. They had no power to bind her by any such proceeding, nor would her rights have been affected by a personal appearance in court. She had no more power to contract in court than she had out of it.

An amended answer was offered showing that Mrs. Robinson had been invested with the powers of a *feme sole*, in accordance with the statute, upon the petition of herself and husband, and that after this judgment had been rendered she and Dobyns paid upward of $9,000 on the land. It is a question of doubt whether this answer is so identified as to make it part of the record; but if it is, this allegation of payment by Dobyns and Mrs. Robinson, without any thing more appearing, should not be regarded as a new contract. An infant may ratify his contract, because it is voidable only; but a *feme covert* must make a new contract after becoming *discovert*, for the reason that the first contract was absolutely void. It never had any legal existence, so far as it affected the rights of the married woman. There might be such action on the part of the wife, after the coverture ceased to exist, as would authorize the chancellor to say that a new contract had been made.

In Bryant on Husband and Wife it is said: "If the wife, after her husband's death, enter upon the estate made to her during the marriage, and take the profits, that will be an assent and confirmation." It would be more proper to say

that it would evidence a new contract, or that a court of equity would not permit the wife, after the disability of coverture had been removed, to enjoy the rents and profits of the land, as well as the possession, without making her account for it. In this case Mrs. Robinson, in a reasonable time after her husband's death, has seen proper to abandon the contract or to have it canceled by the chancellor.    This she had the right to do.

As to Dobyns, a purchaser with her, there can be no reason for rescinding the contract.  He was a joint purchaser with Mrs. Robinson of the whole tract of land, and as such could be made (if Mrs. Robinson was even liable) responsible individually for the whole debt.    If he purchased in conjunction with an infant or married woman, it is his own misfortune, as he must have known the disability of his co-purchaser when the notes were executed.    It is enough for the chancellor to know that the parties to whom he sells are good for the debt. That some may be insolvent, or others under such disabilities as preclude them from making a valid contract, is no defense for those who are solvent and capable in law of making a valid contract.    Where a party becomes the surety of an infant or married woman, by which the infant or *feme covert* obtains the right or title to property, it will not do to say that, because the principal is under a disability, the surety is released.    He voluntarily makes himself liable for the debt or the value of the property sold and delivered, and must account for it.    The case of a joint purchaser is much stronger than that of a mere surety.

In this case Dobyns actually purchased the land, and appears as principal and not as surety.    He executed an obligation as purchaser with Mrs. Robinson, and gave his sureties.    They all knew or are presumed to have known that Mrs. Robinson could make no such contract, and in signing the paper with her voluntarily made themselves liable, al-

though she may not be held responsible. The chancellor or commissioner in fact took the note of the *feme covert* in conjunction with Dobyns and the sureties, knowing that she was not liable, and for the reason, doubtless, that other obligors were responsible.

Mrs. Robinson is entitled to dower in the land; but this claim of dower, if asserted, is the loss of the purchaser. He bought the land with the claim upon it, and must so hold it.

The judgment of the court below is reversed as to Mrs. Robinson and affirmed as to Dobyns. The cause is remanded for further proceedings consistent with this opinion.