## JAMES Y. WILSON, PLAINTIFF IN ERROR, vs. PHŒBE FRIDENBERG, DEFENDANT IN ERROR.

1. A bond, in form joint, executed by a wife as executrix of a former husband's will, and by a husband whom she has married since the former's death, and wherein they covenant to pay money and interest thereon, such money having been borrowed to pay indebtedness contracted in the administration of the estate by her and a co-executor named in the will who has since been enjoined from acting, is binding at law only upon the husband executing it, and he is personally liable upon it whether he be considered as a principal or a surety.

2. Such bond is personally binding upon the husband, though in borrowing the money they acted under an order of the Circuit Court which in terms authorized them to execute a promissory note and a mortgage on certain property of the estate to secure the loan, which order has been ascertained to have no validity as binding either the property mortgaged or the estate.

3. Where a person standing in a fiduciary or representative capacity contracts as to a particular matter either without authority or beyond the limit of his authority, he is legally liable for a breach of such contract; and if a person choose to bind himself by a personal covenant, he will be held liable upon it though he describes himself as such fiduciary or agent.

4. Covenants in contracts made by public agents as such, though in form personal, are on grounds of public policy construed ordinarily to bind the government only; and this is regarded as an exception to the general rule in other cases.

5. A bill in equity filed by a person against the representatives of an estate to enforce a mortgage which has been unlawfully made by such representatives on property of the estate (as well as property which did not belong to it) to secure a loan of money for which such representatives had no lawful authority to bind such estate, is not a good plea in bar to a personal action at law against one of such representatives on the bond given by him and his co-executrix for the money borrowed. Nor is such plea made good by an allegation that the rights of the parties to such equity suit were adjudicated by the courts, it not being shown by the plea that such adjudication was inconsistent with the right to maintain such action at law on the bond.

6. Where a declaration contains but one count, which is upon a "promissory note" for the payment of a certain sum of money and interest, and a plea thereto is adjudged bad on demurrer, and an order is made that judgment be entered for the plaintiff in case the defendant fail to plead again by a certain rule day, and upon such failure a judgment is entered by the clerk, assessing damages upon an instrument under seal whereby the defendant covenanted to pay the amount of money mentioned in the declaration and interest, and all taxes and assessments under the laws of Florida, upon the loan, such judgment is illegal, though the damages assessed are confined to the sum of money and interest alleged in the declaration. There is a fatal variance between the allegation and the proof; and this is not changed by the fact that a copy of the bond was filed with the declaration, though not made part of it by apt words.

Order sustaining demurrer to pleas affirmed and final judgment entered in the clerk's office assessing damages reversed.

Writ of Error to the Circuit Court for Duval county.

This is a writ of error to the Circuit Court for Duval county, where final judgment was entered in the Clerk's office, the demurrer to the defendant's pleas having been sustained by an order of Judge Vann, of the Third Circuit, in the absence from the State of Judge Baker of the Fourth Circuit.

The action was brought by the defendant in error

against the plaintiff in error upon an instrument under seal, of which the following is a copy:

"JACKSONVILLE, FLA., November 18, 1878.

"Two years from date we promise to pay Phœbe Fridenburg six thousand dollars with interest from date at the rate of twelve per cent. per annum, interest payable quarterly, and if not paid as due, to be added to the original and compounded; and all taxes and assessments under the laws of Florida upon this loan to be paid by us. Witness our hands and seals the day and date above written.

"EMILY R. WILSON, [SEAL.]

"As executrix of the will of C. Parkhurst, deceased.

"JAMES Y. WILSON, [SEAL.]"

Converse Parkhurst, the testator, died in December, 1872, and the same month his last will and testament was admitted to probate in Duval county, and letters testamentary issued thereon to his widow, Emily R., and to Converse P. Devereux, who were appointed by the will " executrix and executor and trustees " of it.

The will devises and bequeaths all the testator's property, real and personal, to the executrix, upon the following terms: 1st, to pay his debts; 2ndly, directing that his business at Jacksonville and Palatka be carried on in the same manner as he had conducted it, so long as they deem best for his estate; 3rd, 4th, 5th, 6th, 7th, and 8th, to pay certain legacies to three sisters, and four nieces; 9th, he wills and directs that his children shall be liberally supported and educated, and the expense paid out of his estate by his executrix and executor. His children to be supported by his estate until they, respectively, reach the age of 21 years; and after his son reaches this age, and until his daughter reaches such age, unless she shall die before the son, the son to be paid annually such sum as is

·considered proper for the support of the daughter, until she reaches said age; 10th, he wills and directs that his widow shall be paid quarterly until his youngest child becomes 21 years old such sum as shall be necessary to su· port her in the style in which " we have lived for the five years next previous to " the testator's death; 11th, he wills and directs that when his youngest child attains the age of 21 years, the estate shall be divided equally between his widow and living child or children, share and share alike; 12th, he directs and empowers his executrix and executor to sell and convey the whole or any portion of his real estate at any time or times they may think best to do so.

In June, 1878, upon a bill filed by the said Emily R. and her husband, the said James Y. Wilson, with whom she had intermarried subsequently to Mr. Parkhurst's death, a decree in Chancery was rendered, by which the executor, Converse P. Devereux, was enjoined from further attempting to administer the estate and from using any authority or control over the assets thereof, and the other defendants thereto, Kennerly and Keil, were enjoined from selling, or disposing, or removing any goods, wares, &c., of the estate, and from collecting any of the debts due the estate.

In November of the same year, the said executrix and her husband, James Y. Wilson, filed a petition in the Chancery cause above stated, alleging that, as appeared from the pleadings in said cause, and the exhibits thereto annexed, the estate of the testator was indebted to an amount aggregating not less than $30,000, and that judgments aggregating not less than $10,000 had been rendered in favor of divers persons against said executrix and executor, as appears from the records of said court; that executions had been issued and levied upon the lands of the es-

tate, and issue of executions upon the other judgments was threatened, and that the lands would be levied upon and sold unless the petitioners should procure money to satisfy the same; and that a sale of them under legal process at public outcry would result in a great sacrifice and loss to the estate, and to the beneficiaries under said will, and that the best interest of all concerned in the administration of the estate would be secured by procuring a loan of money to pay off the said indebtedness and judgments, or to pay a proportion of the same, and secure a stay of final process until judicious sales can be effected; that Phœbe Fridenberg, the defendant in error, is willing to lend "to your petitioners" $6,000 "for the period of two years, with interest at the rate of twelve per cent. per annum, to be secured by mortgage on that part of the lands of the estate known as lots 2 and 5, in block 25," and petitioners are satisfied that it is to the interest of the estate to make the loan, and therefore desire to do so, "but because of Converse P. Devereux having been enjoined from exercising his said office of executor" by the said interlocutory decree, "and cannot join in the execution of the notes and mortgage to secure said loan, and this court having jurisdiction of said estate, your petitioners are advised it is expedient and proper for them to apply to your honor for the order of this honorable court to execute said note and mortgage for and on behalf of said estate of C. Parkhurst." The petition also represents the necessity for obtaining other sums to prevent sales, and pay other debts, and counsel fees; that they have sold about $1,500 worth of stock of merchandise turned over to them by Devereux under the order of the court, and the remainder will not realize more than $3,000, and all of the $1,500 but about $70 has been expended in paying debts and expenses of administration; and that only about $100 has been collected on notes and accounts, and this sum has been

used for the purposes last stated, and the other notes and accounts are in the hands of attorneys for collection, and are mostly worthless; and therefore petitioners are without the means to pay the debts of the estate and costs of administering, except through the sale or mortgage of lands, and at the present season of the year, and in the present condition of the county, judicious sales cannot be made. The prayer is for an order empowering and authorizing petitioners " in their said representative capacity to borrow the said sum of money from the said Mrs. P. Fridenberg, and to execute a note and mortgage " on said lots, " to secure the payment thereof," and to borrow such other additional sums from time to time as may be necessary for the purposes aforesaid, not to exceed in all $20,000, and to secure the payment of such additional sums by mortgage of such other portions of the land of the estate as may be available for that purpose.    The petition is verified by the affidavit of said James Y. Wilson.

The Chancellor, on the 9th day of November, made an order decreeing that the said " Emily R. Wilson, as executrix of the last will and testament of C. Parkhurst, deceased, and James Y. Wilson, her husband, may and they are hereby authorized and empowered to borrow from Phœbe Fridenberg six thousand dollars for the period of two years from the 6th day of November, 1878, with interest at the rate of twelve per cent. per annum, and execute their note therefor, and secure the payment of said promissory note by a mortgage executed by them on " said lots in the city of Jacksonville, and that " the said note and mortgage so executed by them shall have the same force and effect to all intents and purposes as though Converse P. Devereux, as executor of said last will, who has been enjoined by this court, for the time being, from attempting to administrate said estate, had joined therein."    The

order also authorizes them to borrow further sums and to execute notes and mortgages, and requires that all moneys borrowed by them for the purposes of paying debts, judgments and costs of administering, and reasonable attorneys' fees for prosecuting and defending suits against the legal representatives of the estate, and further requires a report under oath to be filed by petitioners on the first Monday of every month with the clerk of the court, of moneys so borrowed.

*The First Plea* alleges that the said Emily R. was, at the execution of said writing sued on, and is still the executrix of the said last will and testament, and wife of the defendant (plaintiff in error); that the said writing was signed in obedience to said order of the Circuit Court of Duval county, which has jurisdiction of the trusts created by the will, and of the administration of said estate, and of said Emily, in her capacity as such executrix, and of the defendant, in his capacity as husband of said executrix, and said court neither had nor assumed to have any other jurisdiction of said Emily or of defendant. It makes an annexed copy of the order and an annexed copy of the mortgage a part of the plea, and alleges that the signature of said Emily and that of the defendant were both necessary to give the said writing validity and to constitute the signature of a single contracting party as the single act of the representative of said estate; and that all the parties thereto understood and accepted said contract as the contract of the representative of the Parkhurst estate, " and so this defendant says that the writing sued on is not the joint and several contract, or the joint or several contract of this defendant, but the single contract of the executrix of the will, and the single acting representative of the estate of Converse Parkhurst, deceased, and not the contract of this defendant."

The mortgage, which bears date November 18, 1878, purports to be " between Emily R. Wilson, *as* executrix of the last will and testament of Converse Parkhurst, deceased, and James Y. Wilson, her husband, parties of the first part, and Phoebe Fridenburg  *   *  , party of the second part." It recites the making and probate of the will, and the testator's devise and bequest to his executrix and executor " all of his estate, real and personal, upon trust for the purposes therein named, with power to sell and convey the whole or any portion of his real estate at any time or times they might think best to do so, the qualification of the executrix and executor, the intermarriage of the executrix with the defendant, the injunction against Devereux, that it is in full force, and that the said Circuit Court granting it has jurisdiction of the administration of said estate, the filing of said petition, and making the order thereon, quoting that part of it authorizing the petitioners to borrow from the plaintiff, and to mortgage lots 2 and 5, and declaring the force and effect of the note and mortgage, and reciting that the plaintiff " has this day lent to the parties of the first part the sum of $6,000, and the said parties of the first part, in consideration of the sum of six thousand dollars, lawful money of the United States, to them in hand paid, the receipt whereof is hereby acknowledged, have executed to the said Phœbe Fridenburg their *promissory note* of even date herewith for the said sum, payable two years from the date thereof, with interest at the rate of twelve per cent. per annum, payable quarterly, said interest to be compounded if not paid according to the tenor of said note." The mortgage then proceeds as follows : " Now, therefore, the said parties of the first part, for the securing of the payment of said sum of money mentioned in said promissory note, and the interest thereon, the

said parties of the first part, by virtue, as well of the power and authority given by said last will and testament, as the power and authority upon them conferred by the afore recited order and decree of said Circuit Court, have granted, bargained and sold" said lots, and all the right, estate, &c., which the testator had therein in his life time, and at the time of his decease, "and which said parties of the first part, or either of them have, by virtue of said will and testament or otherwise, of, in or to" the same. The condition of the mortgage is: "If the parties of the first part, or their successors in the administration of the estate of C. Parkhurst, deceased, and executing of said last will and testament shall well and truly pay costs," the plaintiff or her assigns, "the said sum of money mentioned in said promissory note according to the true intent and meaning" thereof, "together with all costs and expenses, including a reasonable solicitor's fee which the said Phœbe Fridenburg may incur or be put to in collecting the same by foreclosure or otherwise, and shall in the meantime keep the buildings erected and to be erected on said lots insured against loss and damage by fire by a good and responsible insurance company or companies in, at least, the sum of $6,000, for the benefit" of the plaintiff, and "shall also pay all taxes or assessments of any kind that may be laid or assessed upon said lots, and upon this loan or mortgage under the laws of the State of Florida," then these presents to be void. Then follows this covenant: "And the said parties of the first part covenant and agree for themselves and their successors to pay unto the said Phœbe Fridenburg, her heirs, executors, administrators and assigns, the said sum of money, according to the tenor and effect of said promissory note," and the costs and expenses, including attorneys' fees, that may be incurred, and to keep up said insurance, and "to pay all said taxes and assessments, and

said parties of the first part further covenant and agree that if they shall fail to effect such insurance, or to keep up the same, it shall be lawful for the said Phœbe Fridenburg to effect or keep up the same, and the premium or premiums [expense or expenses] for effecting or keeping up the same, shall be added to the amount of the said promissory note, and secured in the same manner, and be payable with like rate of interest as said promissory note; and if said Phœbe shall pay any such tax or assessment as is above provided for, upon lawful demand of any officer of the State, county or municipality, any sum so paid shall in like manner be added to the sum named in said promissory note, and be secured and payable in like manner as though it had been part of the principal of said note, with the same interest, except that interest shall be chargeable only from the date of such payment or payments." It is signed and sealed as follows:

" EMILY R. WILSON,   [SEAL.]

" JAMES Y. WILSON,   [SEAL.]"

and duly attested.

*The Second Plea* " avers all the averments " set up in the *first* plea, and further says that the proceeds of said note and mortgage were trust funds raised in obedience to said order, and were disbursed under the order and directions of said court so having and asserting jurisdiction over said funds, and over said Emily, as executrix, and sole acting representative of said estate, and over this defendant, in his capacity of husband of said executrix; and that neither he nor said Emily had or assumed any property interest in said funds, but the same were trust funds raised under the order of and disbursed by the direction of said court.

*The Third Plea* " avers all the averments " set up in said *first* and *second* pleas, and further says that the said plaintiff, on the 24th day of November, 1882, exhibited her

amended bill, seeking to enforce the collection of the alleged debt sued for herein against this defendant and others setting up the averments therein set up, and therein and thereby showing that the said writing sued on was accepted by the plaintiff as the contract of said Emily R., as executrix and sole representative of said estate, and of this defendant in his capacity as husband of said executrix, entered into in obedience to the order of said Circuit Court, and this defendant and others were duly impleaded therein, and said bill was duly pleaded to by said defendants; and the rights and equities of said parties under said contract so accepted by plaintiff were ascertained and adjudicated by both the Circuit and the Supreme Court of this State, and so the plaintiff is estopped from saying that the said contract was not the single contract of said sole representative of the estate of Parkhurst and of this defendant in his capacity of husband of said executrix entered into in obedience to said order of said Circuit Court, and accepted by the plaintiff as such. A copy of the bill is annexed, and defendant "incorporates" as part of his plea so much of the allegations and statements of the bill as show the facts and circumstances under which said writing was signed, the steps which led to it, the application of the funds, and the nature of said contract as it was understood and accepted by the plaintiff.

The bill of complaint so incorporated into the plea was brought by the plaintiff against "Emily R. Wilson, executrix, &c., * * and James Y. Wilson, husband of said Emily R. Wilson, and Edgar C. Parkhurst and Daisy E. Parkhurst, infant children of said Converse Parkhurst, deceased." It alleges the making of the will, death, appointment of executrix and executor, power of sale in the will, the marriage of the former with Wilson, injunction against Devereux, the order of November, 1878, authorizing the peti-

tioners to borrow of and make a mortgage to plaintiff, the loan of $6,000, the making and delivering to plaintiff of promissory note, of same terms, &c., as that sued on herein, and the execution of the mortgage. Copies of said *note*, [in fact a copy of the sealed instrument sued on] and mortgage, will, injunction order, letters testamentary, petition and order thereon, are annexed as parts of the bill. The bill states that lot 2 was owned by Parkhurst at his death, and lot 5 was acquired and purchased two years after his death by his executor and executrix. It also alleges the embarrassment of the estate at the time of the loan, through the mismanagement of Devereux, and the neglect of the executrix in carrying on the mercantile business, and that said estate had thereby become almost, if not hopelessly, insolvent, and there were many judgments and executions, based on said debts, rendered and issued against said executor and executrix, and levies had been made on the property of said estate and sales advertised by the sheriff, which, if made, would have sacrifieed and swept away the entire estate; that from said loan the executrix and James Y. Wilson paid the principal portion of the judgments with other debts existing against said estate and saved the same from being sacrificed at that time. It sets up the wholly solvent and wealthy condition of the estate at the testator's death, the failure of said Emily, executrix, and James Y. Wilson to pay interest on the loan, and taxes on the mortgage property, and that the property was advertised for sale for non-payment of taxes, and that plaintiff had to pay large sums of money, as appears by tax certificate and tax deeds, which she offers to produce; that said Emily, * executrix, and said James Y., her husband, to defeat and defraud complainant of the money loaned, pretend that the property was a homestead of said Converse Parkhurst, and that his children were not represented

before the court when the order for the loan was made, and that said Emily, neither as executrix, nor in her own right, had any interest either of dower or otherwise, in said mortgage property; and that said property having been the homestead of said Parkhurst, deceased, he had no power to convey it to the executors " for general purposes, etc., and that consequently the said proceedings and order of this court, and the mortgage executed by them, as based upon said order, and said last will and testament, were wholly void and of no effect whatever." Then follows a negative of these " pretences," and an allegation also that said Emily has dower in the lands. *The prayer of the bill* is for an account of what is due on the note, and the amount of taxes paid on the property, and interest thereon,-and costs and expenses of the suit, including solicitor's fees, and that said Emily R. Wilson, executrix of the estate of C. Parkhurst, deceased, and said James Y. Wilson, and all persons claiming by, through or under them, * * * may be barred and foreclosed of all equity of redemption * in the land, and the mortgaged property be sold and the proceeds applied to taxes, and interest thereon, costs, damages and expenses, principal and interest of the debt, and in case it should be adjudged that the mortgage is not a valid lien upon the property, that he may be subrogated to the lien of the taxes, and the property sold to satisfy the same ; and in case the mortgage is not valid, and the said Emily, executrix, has dower in any of the land, her dower interest may be subjected to payment of the mortgage debt; and that in case it should be adjudged that the mortgage is a valid lien upon the property or any part thereof, and the amount realized from the sale should be insufficient to pay the debt, that she may have " a personal judgment for the deficiency thereof against said Emily R. Wilson, as executrix of the estate

of said Converse Parkhurst, deceased, and the said James Y. Wilson," and for further relief, &c.

*The Fourth Plea* " pleads all the other averments heretofore pleaded, and further says that no consideration whatever for the making by this defendant of said alleged promise to pay the plaintiff, as set up in said declaration."

The other facts are stated in the opinion.

*A. W. Cockrell & Son* for Plaintiff in Error.

The declaration seeks, in a single count, to deduce Jas. Y. Wilson's liability to pay the sum demanded from his alleged execution of the instrument sued on, a copy of which is appended to the declaration.

This instrument is in form a joint instrument, jointly executed by Emily R. Wilson and James Y. Wilson. It does not purport to be, and is not, a joint and several instrument.

The obligations, sought to be enforced, according to the declaration, exist only by virtue of the covenant declared on; and as Judge Grier, in U. S. vs. Price, 9 How., 83, says: " The doctrine of these cases is clearly stated by Sir William Grant, in the case of Sumner vs. Powell, 2 Meriv., 30. ' Where,' says he, ' the obligation exists only in virtue of the covenant, its extent can be measured only by the words in which it is conceived. A partnership debt has been treated in equity as the several debt of each partner, though at law it is only the joint debt of all. But there all the partners have had a benefit from the money advanced on the credit given, and the obligation of all to pay exists independently of any instrument by which the debt may have been secured; so, where a joint bond has been in equity considered as several, there has been a credit given to the different persons who have en-

tered into the obligation. It is not the bond that first created the liability.'" "It is for this reason," says Mr. Justice Story, (Eq. Juris., 104,) "that equity will not reform a joint bond against a mere surety so as to make it several against him, on the presumption of a mistake from the nature of the transaction."

"When an obligee takes a joint and several bond, he has nothing to ask of equity; his remedy is wholly at law. If he elects to take a joint judgment, he voluntarily repudiates the several contract, and is certainly in no better situation than if he had originally taken a joint security only; equity gives relief, not on the bond, for that is complete at law, but on the moral obligation antecedent to the bond, when the creditor could have had no remedy at law. An obligee who has a joint and several bond, and elects to treat it as joint, may somestimes act unwisely in so doing, but his want of prudence is no sufficient plea for the interposition of a chancellor."

15 Wall., 140, illustrates the same principle.

These cases show that a court of chancery will not hold a joint bond both joint and several. But a court of law is bound by the terms of the bond, and can render a several judgment, on a joint obligation only in the case specifically provided by the statute, (sec. 9, Acts 1825, p. 17,) and this statute in terms applies only to cases where suit is brought against two or more, and summons is not served on one or more.

It is submitted, under the application of the universally recognized rule controlling pleading upon a joint contract, the declaration disclosing as cause of action a joint obligation is bad in substance.

2d. "The cardinal rule governing the construction of all contracts, whether verbal or parol, or under seal, is so to expound them as to carry into effect the intention of the

parties, and this intention is to be collected from the whole agreement." 2 Ala., 425.

Writings connected by a reference of one to another must be considered, and construed, as parts of an entire transaction, and as if they were embodied in one instrument. 4 Wend., 374; Strong vs. Barnes, 11 Vermont, 221; s. c., 34, Amer. D., 684; Rogers vs. Bancroft, 20 Vermont, 256; 57 N. Y., 56; 3 Paige, 254. The bond sued on, the mortgage and the order of the court authorizing their execution, being so connected must be considered as the depository of the meaning and intention of the parties—and whether or not Wilson, the executrix, and her husband, bound themselves severally as natural persons, or whether the two joint obligations constituted, under the order of the court, a single representative, binding, or seeking to bind, the estate of C. Parkhurst, must be collected from their several writings construed as one writing. The question is, did James Y. Wilson take upon himself in the light of their several writings, a several obligation?

1st. The bond is a joint bond. Its language is "we promise," that is the wife, the executrix, and the husband, the two together constituting a single representative of the estate of Parkhurst.

The language of the mortgage is, "provided always, and these presents are on the express condition that if the said parties of the first part "—that is, the said Emily R., executrix, and the said James Y., her husband—" or *their successors* in the administration of the estate of C. Parkhurst, deceased, and the executing the said last will, shall well and truly pay." Its language also is, " and the said parties of the first part covenant for themselves and their successors to pay unto said Phœbe Fridenburg, her heirs, executors, administrators or assigns, the said sum of money." Again,

the mortgage in the opening clause purports to be made not by " Wilson and wife," but by " Emily R. Wilson, as the executor of the last will and testament of Converse Parkhurst, deceased, and James Y. Wilson, her husband." The question arises, what was James Y. Wilson's relation to this bond and mortgage thus executed by his wife, as the executrix, and himself as her husband ?   He was certainly not the representative of C. Parkhurst's estate.   If he were he could administer alone, and be alone responsible for his own acts.   Again, his control ceases upon the death of his wife, which is not the case with a co-administrator, and according to the authorities  he is joined with his wife rather for conformity.   1 Went. Pl., 201, note 2 ; Chitty's Pl., 105; 3 Bac. Abd., 20; Toller on Executors, 241.

3d.  In case of contracts it is the duty of courts of justice first to discover the meaning of the contract, interpreting it in the light of the terms in which the parties sought to embody their meaning, and then to compel their execution, or to give satisfaction for the breach of them.   But it is not the business of conrts to make contracts for the parties ; nor will they discerning that a contract, according to its true meaning, has no legal validity, or in effect will be inoperative, give it operation by attributing to it a meaning which the parties never intended.   Are the courts, because, according to the true meaning of the contract the plaintiff has no remedy, to devise a contract which the parties never contemplated to give a remedy against a defendant who has acted honestly in the execution of his trust ?   Such was not the disposition of the court in the case of Noble vs. King & Smith, where the court refused to interfere by giving plaintiff leave to amend, in an action brought against executors in their own right, where the amendment would have been fatal to the executors individually.   1 Henry Blackstone, 36.

In McBeath vs. Haldiman, 1 Durnford & East, 180, Lord Mansfield says: "The only question before the court is whether the defendant be liable or not in this action. If he be, the plaintiff must recover; if not, no consideration respecting the plaintiff's remedy against any other party can induce the court to make him so." Says Ashhurst, J., in same case: "In great questions of policy we cannot argue from the nature of private agreements. But even in these cases the question must be what was the meaning of the parties at the time of entering into the contract? A person acting in the capacity of an agent may undoubtedly contract in such a manner as to make himself personally liable; and that brings us to the true question here, namely, whether, from anything that passes between the parties at the time, it was understood by them that the plaintiff was to rely upon the personal security of the defendant? But nothing appears from the evidence in this case to warrant such a conclusion. Government was made a debtor, and it is evident that the plaintiff looked to them for payment, for he first made application to the treasury, and his demand against the defendant was an after thought, when he found he could not obtain the money in any other way. Then it seems to me that there is nothing in this transaction to fix the defendant, or show that the plaintiff considered him as his debtor at the time the credit was given."

In Hodgson vs. Dexter, 1 Cranch, 345, the court holds that the intent to bind personally must be very apparent, indeed, to induce such a construction of the contract as fixes a personal liability.

The real question is, did Wilson and wife intend to contract in their natural capacity? Were they so understood at the time of the transaction by Mrs. Fridenberg? The circumstances, the uses to which the money was to be applied, the application to the court which was administer-

ing the trust, for authority to do what was done, the conduct of Mrs. Fridenberg in pursuing them in their representative capacity, and the terms of the several writings in which the transaction was expressed, all exclude the construction they were acting otherwise than in a representative character.

It may be said to be a general principle, where one undertakes to act on authority which he does not possess, he shall in a contract made upon that basis be answerable in his private capacity. This principle is a reasonable one as the assumption is in itself a breach of the contract. If A., as the agent of B., promises C., when in fact he is not B.'s agent, we all feel that for the falsity and deception he ought to be responsible in his private capacity.

That is not the case here. Wilson and wife assumed no authority. Doubtful of their authority, they applied to the court, which was then and there exercising jurisdiction over the estate of Parkhurst, as shown by the pleadings here, and acted in obedience to its authority ; they declared no falsehood ; they practiced no deception. If there was a mistake of the legal powers of the administrators, it was the mistake of the Circuit Court of Duval county exercising an admitted jurisdiction, as well as the mistake of both parties to the contract. The parties were and are " *in pari conditione*," and the rule is, " *melio est conditio possidentis.*" There is no reason why one should be relieved at the expense of the other.

The covenant to pay is a covenant executed by Mrs. Wilson, as executrix, with her husband, as co-administrator, in virtue of his relation to the estate as the husband of the executrix—the two constituting in law one, that is, one representative of the estate. This is not a case of a covenant or assumpsit, executed jointly by two persons, each acting for himself, where the presence of one might be dispensed with without affecting the legal character of the in-

strument. But this is the case wherein the presence of both Mrs. Wilson and her husband, as one contracting party, was necessary to give the transaction validity as the single act of the representative of Parkhurst's estate. James Y. Wilson had no representative character, no relation to the estate of Parkhurst, except in connection with, as an incident to, his office, so to speak, of husband of Mrs. Wilson. He had no independent relation to the estate, as Devereux had, for instance, before his suspension. He executed the note and covenant contained in the mortgage, not as a several or independent obligation, but because it was necessary to make valid the execution of that note and mortgage by the executrix, his wife. Without his signature, the signature of the executrix had been unavailing, for that reason. In a word, James Y. Wilson's action was necessary, and went no further than was necessary to give completeness to the action of the executrix in obedience to the order of the court. This covenant, then, interpreted in the light of the relation of the parties, then the terms of all the writings therewith connected, is not the joint covenant of several obligors, but the single covenant of a single obligor, the representative of Parkhurst's estate, Emily R. Wilson and her husband, together, being, so to speak, the executrix of that estate in their relation of wife and husband.

It is submitted this court cannot distribute this single obligation into a joint, or a joint and several obligation ; that this court, whose sole duty in this regard is to enforce the contract that was made, will not, because the contract that was made is ineffectual, cast about to supply omissions, or put upon parties responsibilities other than contracted for.

As then neither James Y. Wilson nor his wife assumed a joint or several obligation, in their natural capacities,

but a single obligation binding them singly in their representative capacity, as a single representative of Parkhurst's estate, the law will not distribute this single liability or deduce from it a several liability on the part of James Y. Wilson in his natural capacity.

The 3d plea sets up that on the 24th day of November, 1882, the plaintiff exhibited an amended bill against this defendant and others, setting up the averment therein set up, and therein and thereby showing that the said writing now sued on was accepted by the said plaintiff as the contract of the said Emily R. Wilson as the executrix of the will, and the sole representative of the estate of Converse Parkhurst, deceased, and of this defendant in his capacity as husband of said executrix, entered into in obedience to the order of said Circuit Court.

We submit the complainant in that case, the plaintiff in this case, is estopped by the record now from denying that the contract sued on in this action as other than, or different from what she alleged it to be in that bill.

The rule deducible from the authorities is, that a decree upon a bill, or other statement of a cause of action had upon a demurrer, or a plea admitting that the contract or cause of action is as set up in the bill, is equally as conclusive as a verdict finding the same facts would be; since the matter, thus solemnly averred by one party, and admitted by the other, is established in the former case, as well as in the latter, by record evidence; and the parties as well as their privies are forever estopped from denying that the contract is other, or different from what, it was thus solemnly averred by the one, and admitted by the other.

*M. C. Jordan* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The first assignment of error is in the ruling and order of the Circuit Court sustaining the demurrer to the pleas of the defendant, James Y. Wilson.

It is contended on behalf of the plaintiff in error that looking at the several writings, the bond and the mortgage, and the order of the Circuit Court authorizing their execution, including the petition upon which the order is founded, there is no personal liability upon his part; that a contract is to be expounded and carried into effect according to the intention of the parties, and this intention is to be collected from the whole agreement, whether it be contained in only one or in several papers; that there was no intention that he should be bound.

It is well settled as a general rule that where an executor, administrator or trustee, who is *sui juris*, signs a promissory note, bond or other contract, *as* executor, administrator or trustee, he is personally liable upon it. Robinson vs. Springfield Company, 21 Fla.; Daniel on Nego. Instruments, §§261–2, 271. " A trustee, merely as such, is, in general, only sueable in equity. But if he chooses to bind himself merely by a personal covenant, he is liable at law for a breach thereof in the same manner as any other person, although he describes himself as covenanting as trustee; for, in such a case, the covenant binds him personally, and the addition of the words *as trustee* is but matter of description to show the character in which he acts for his own protection, and in no degree affects the rights or remedies of the other party. The authorities are very elaborate on this subject. An agent or executor who covenants in his own name, and yet describes himself as agent or executor, is personally liable for the obvious rea-

son that the one has no principal to bind, and the other substitutes himself for his principal." DuVall vs. Craig, 2 Wh., 56. In Sims vs. Stillwell, 3 How., (Miss.,) 183, an agreement was as follows: " I, Everett Stillwell, executor, admit and acknowledge that the bill of John Miller for lumber furnished on Wm. H. Sims' order since the death of Lewis Hord, amounting to about seven or eight hundred dollars, is just, and that I will pay the same, said lumber having been furnished for carrying on a building which I, as executor of Hord's estate, am having completed. March 22, 1837. Everett Stillwell, executor." "In reference to this contract," says Sharkey, C. J., speaking for the court, "there certainly can be no pretence that it makes the defendant liable as executor only. *It is clearly an undertaking which makes him individually responsible.* The court, therefore, erred in charging the jury that if they believed the defendant intended to bind himself only as executor of Hord they must find for the defendant." In Sumner vs. Williams, 8 Mass., 162, the administrators of an insolvent estate, under a license of court to sell the real estate of their intestate for the payment of his debts, sold an equity of redemption of which their intestate was supposed to die seised, (the grantees at the same time purchasing an assignment of the mortgage) and in their deed the administrators covenant *in their said capacity of administrators* that they as *administrators* are lawfully seised of the premises; that they are clear of all incumbrances except the mortgage; that they have *in their said capacity* good right to sell, &c., and that *as administrators* they will warrant and defend the same to the grantees and their heirs, &c., against the lawful claims of all persons; and they sign and seal the deed *as administrators.* In an action against them on the covenant to warrant, &c., after eviction by paramount title, it was held that they were answerable personally on their

covenant.   It was contended for the administrators that the exposition of their character and capacity in the contract itself, and the subject matter of it, necessarily require a construction which discharges the defendants from any liability upon the failure of the title which they undertook to convey; and that the covenants of the defendants must have been intended by them and accepted by the grantees in the deed in question either as covenants void in their operation or as covenants which respected the acts of the grantors only. " In the case at bar the plaintiff," says Sewall, J., " relies upon an express warranty of the title or interest purchased; and this covenant forms an important part of the contract contained in the deed of the defendants. An administrator acting under a license and an authority to sell the real estate of his intestate is not required by any duty of his office or trust to enter into a personal covenant for the absolute perfection of the title which he undertakes to convey, or for the validity of the conveyance beyond his own acts.   It will be admitted, however, that he is at liberty to do it, if he chooses thus to excite the confidence of purchasers and to enlarge the proceeds of the sale; and that he may be competent to engage his own credit collaterally in the conveyance * * * in so much as that a contract to this effect is not unlawful or void in itself for any absurdity or inconsistency." * * * * " If the deed contains express covenants of the administrator as in the case at bar he is certainly not to be holden beyond the legal import and effect of such covenants.   If these are doubtfully expressed and the words admit of a construction which restrains the covenant to his own acts, this may be reasonably conjectured to be the true construction; for this is the most natural and therefore the most probable intention of the parties in the actual circumstances of the case.   The rule then applies that where sentences are ambiguous or capable of sev-

eral significations, conjectures are necessarily resorted to, to determine the meaning of the parties ; and conjectures for this purpose may be drawn from the subject matter and the circumstances of the contract. This rule is applicable, however, only where the sentences in which the parties have expressed themselves, either from the terms or their arrangement, leave their intentions doubtful. For otherwise the most usual and natural import is to be given to the instrument ; and to· resort to rules of construction would be to substitute probable conjectures for evidence that is direct and unalterable." See also m. p. 208, 211. " The objection to the liability of the defendants, which strikes the mind with most force " says Judge Parker, " is that they will thus be subjected to the payment of the damages for defect of title contrary to their intention when they entered into the contract, and when they were to derive no personal benefit from the execution of their trust as administrators by the sale of the estate. * * * It is true that the most just way of ascertaining the legal effect of a contract is to know the intention of the parties to it. * * * What did the parties mean, is the great question ? But, as I apprehend this beneficial rule, it is applicable to clauses and provisions in the instrument, the words of which are of a doubtful import, and seldom is called in aid to settle the question of the liability of any party to the instrument, when its meaning has been ascertained. An attorney who contracts for his principal may mistake his authority and make a contract beyond the letter of his power. He certainly does not mean to charge himself ; and yet he would be chargeable if any damage arose from the non-performance of his contract." 208, 210.

In Whiting vs. Dewey, 15 Pick., 428, (A. D. 1834,) where the grantors, who were testamentary guardians, covenanted

in their capacity of guardians, " that Benedict Dewey, deceased, died seised of the premises ; secondly, that they, in their capacity aforesaid, in right of the said minor, were lawfully seised of the premises."

In an action on the covenants against the surviving guardian, it was held that they were liable personally on these covenants. " This question," says the opinion, "was fully considered in Sumner vs. Williams, 8 Mass., 162, (A. D. 1811,) which in principle cannot be distinguished from the case at bar; and although the court was divided in opinion in that case, the soundness of the decision by a majority of the court has never since been questioned ; and it is supported by a current of authorities and by well established principles. When parties contract *in autre droit*, and fail to bind their principals, they are to be held to be personally responsible. This is the general rule, and is perfectly reasonable and just. The exception is where the contracting party is a public agent, and contracts on the public account. This exception is founded on public policy and therefore emphatically proves the rule ; for if the rule had not been well established the exception would have been placed on other grounds than public policy." In Mitchell vs. Hazen, 4 Conn., 495, the grantor of the land was the administrator of A., and acted under an order of sale, and it was held that a general power of sale for the payment of debts given by the probate court to an administrator authorizes him to execute such an instrument only as is legally proper for the conveyance of the estate to be sold ; and that whenever a person undertakes to stipulate without authority, or beyond his authority, he is answerable personally for the non-performance of the contract; and that if a person choose to bind himself by a personal contract, he is legally liable for a breach of it, although he describe himself as covenanting as trustee, agent, executor or

administrator, and that therefore where a grantor in a deed purporting to convey the estate of an intestate described himself as "administrator of the estate" of the intestate, stated his power to sell as derived from the order of the court of probate for that purpose, and signed the deed with the addition of "administrator" to his name, in which deed he covenanted as follows: "I, the said grantor, do for myself, my heirs, executors and administrators, covenant with the said parties; that I am well seised," &c., he by such covenant bound himself personally. In Beldon vs. Seymour, 8 Conn., 19, the grantors, administrators acting under an order from the probate court to sell for the payment of debts, so described themselves in the deed and in such deed as *administrators aforesaid* and by *virtue of the powers* aforesaid for *themselves* and for the *heirs of a* (the intestate) covenanted that they had good right to convey the premises, which deed was signed by themselves without any addition to their names, it was held that this was a personal covenant which bound the grantors and them only. In Childs vs. Monius, 6 E. C. L. Repts., 228, [459,] the makers of the promissory note promised *as executors* of the will of Thomas Taylor to pay, and they were held to be bound personally; Dallas, C. J., of the Common Pleas, saying in his opinion: "If they meant to limit their liability why did they not add to the words *as executors* the words, *out of the estate of Thomas Taylor*. In Mason vs. Caldwell, 5 Gilman, 196, a guardian made a bond for title in which she covenanted "for herself and her successor." She professed in the bond to act in pursuance of and according to an act of the Legislature of Illinois. It was held to be personally binding on her, though void as to the ward. "It makes no difference," says the court, "that Mrs. Mason was professing to act as guardian under a legal appointment. If an administrator or guardian, in his representative capacity,

makes a contract or covenant which he has no right to make, and which is not binding on the estate or ward, he bound personally to make it good." Ibid, 206, 207 ; Burlingame vs. Brewster, 79 Ill., 515. The promissory note was signed as trustee " for the First Universalist Society," and these words were torn from the note by appellee before presenting it to appellant for signature. The opinion of the court is that while the words torn from the note would show that it was as trustees the promissors were induced to. make it, they do not show any attempt by words usually deemed apt for that purpose to bind the corporation, and that the makers were personally bound. See also Hayes vs. Matthews, 63 Ind., 412. In Austin vs. Munro, 47 N. Y., 360, it was held that a contract made by executors in form as such in consideration of services to be rendered in vindicating and asserting their claims to property in their representative capacity, and for the benefit of the estate they represent, does not bind the estate or create any charge upon the assets in the hands of the executors, and the doctrine of the opinion is that such a contract, if valid in other respects,. though it does not bind the estate, binds the executors personally, and in Davis vs. French, 20 Maine, 23, the Supreme Court, citing Sumner vs. Williams, remark, but the executor or administrator cannot create a debt against the deceased ; and it is immaterial how clearly the intent to do. so may be expressed, for having no power to bind the estate, he only binds himself by such a contract; and in McEldey vs. McKenzie, 2 Porter, 33, it is held that although an executor or administrator may contract for necessary matters relating to an estate, he does so on his personal responsibility, and the action to recover on such contract at law must be against him individually.

Applying the principles of the above authorities, we are unable to perceive why the plaintiff in error is not bound

personally by the instrument sued on.   In it is a clear and
unqualified covenant on his part to pay.   There is no am-
biguity or doubt about it.   Its language is as plain as it
can be, and no rule of construction can be invoked to change
its meaning, nor can parol testimony be used to change its
terms.   But it is said that there was no such intention.
The intention which the courts are to enforce is that which
the language used, and the words of the contract as applied
to the subject matter, whether in one or several instru-
ments, indicates.   Extending our view to the mortgage
we find nothing in it to destroy the effect of the
bond sued on.   It refers, it is true, to the in-
junction against Devereux, the petitioner, and the order
authorizing the petitioners to execute their note and secure
the same by the mortgage, and that the said note and mort-
gage shall have the same force and effect to all intents and
purposes as though Converse P. Devereux, as executor
of said last will had joined therein, yet it does not purport.
to be executed solely by virtue of such order, but as well
by the authority given them by said last will and testa-
ment.   In it we find, after the condition, a distinct cove-
nant, by which the parties of the first part "covenant and agree
for themselves and their successors to pay unto the said
Phœbe Fridenberg, her heirs, executors, administrators
and assigns the said sum of money according to the tenor
and effect of the said promissory note, and all costs and
solicitors' fees that may be incurred by her or them in col-
lecting the same by foreclosure or otherwise, and to keep
said buildings insured as aforesaid against loss or damage
by fire, and to pay all said taxes and assessments," &c.   As-
suming that the order gave legal power to mortgage the
land no such covenant as this was necessary to the mort-
gage.   Admitting that the word " successors " shows an
intent to bind those who should come after them in the

same trust relation, the meaning as to themselves in the light of all authority, is that the language binds them personally. We can give it no other legal effect, when considered in connection with the instrument sued on, than as evincing an intent to create a personal liability. They were at liberty to so covenant, and when made it must in the eyes of the law be held to have been extended to the lender as one of her reliances for payment. There is nothing stated in the mortgage qualifying such effect, nor is there anything else in the mortgage which this covenant is necessary to, and which would be ineffectual without it. We must ignore it entirely before we get rid of the effect indicated. This we have no right to do. It is a part of the contract, made and accepted by the parties, and to ignore it would be no less unauthorized than to interpolate into the contract at its foot a final statement that nothing in this covenant was to have any effect whatever to bind personally any party to the contract. If the intent of the parties had been that it should have no such effect, why was it put in, or if put in for any other purpose than that which it conveys, why was it not limited by proper words? In Duval vs. Craig, *supra*, there was a covenant by the grantors against former gifts, grants, incumbrances, &c., made by them, and then a covenant to warrant generally, followed by a statement that if the land or any part thereof should be at any time taken by a prior legal claim the grantors should make good the same *by other lands*, and it was held that the qualifying statement did not apply to the first covenant. The supposition that the parties might have meant to apply the same indemnity to both covenants was regarded as reasonable, but it was held that something more than the *reasonableness* of such a supposition must exist; that the covenants stood as distinct in the deed and there is no incongruity or inconsistency in considering

them as independent of each other; and that a case ought to be very strong which would authorize a court to create by implication a restriction which the order of the language does not necessarily import or justify, and ought to be one in which no judicial doubt could exist of the real intention of the parties to create such a restriction. The language in the two instruments imports a personal liability, and we find nothing restricting its legal effect.

Looking at the petition and order, we recognize that the former was filed and the latter made in the cause wherein the petitioner had obtained the injunction against Devereux, and that the prayer is for an order authorizing them in their representative capacity to borrow the money and to execute the note, and the mortgage on the lots to secure the payment thereof, and that the order authorizes Mrs. Wilson, "as executrix," and "James Y. Wilson, her husband," to "borrow" and "execute their note therefor, and secure the payment of said promissory note by a mortgage executed by them on" the lots, and provides that "the note and mortgage so executed by them shall have the same force and effect to all intents and purposes as though Converse P. Devereux, as executor, who has been enjoined by this court, for the time being, from attempting to administer said estate, had joined therein;" and we do not forget that there is in the petition a statement that the defendant in error is willing to lend the $6,000, with interest at the rate stated in the petition "to be secured by mortgage on" the lots described, and that because of "Devereux having been enjoined and cannot join in the execution of the notes and mortgage to secure the loan, and this court having jurisdiction of the said estate, your petitioners are advised it is expedient and proper for them to apply for the order to execute said note and mortgage for and on behalf of said estate of C. Parkhurst." Mrs. Fridenberg was no

party to this original suit, or to the petition and order ; nor is there in the petition or order anything which precluded the petitioners from entering into a personal covenant to pay the money if they should desire. The purpose of the petition was to get authority to bind the estate, and assuming that the order, if of any validity, makes the note and mortgage of any other effect than they would be without it had Devereux not been enjoined, and had joined in their execution, it cannot be assumed or held that the effect or meaning of the order was that the petitioners should, in carrying it out, execute any paper purporting to bind themselves personally. It was not the purpose, or intent, or effect of any of their proceedings to confer any power to bind themselves personally or to authorize them to execute any paper purporting to do it, and the order cannot be used as either authorizing or limiting the effect of any such paper. Had they executed a paper binding themselves personally for a loan of $6,000, at 12 per cent. per annum for two years, the terms stated in the order, they could not have pleaded the order in bar of a recovery on their personal contract. Instead of merely pledging the estate under the order they have unqualifiedly pledged themselves, and two instruments under seal give solemn evidence of it. Admitting moreover that at the time the order was obtained it was the purpose of the petitioners to bind only the estate and not themselves, it is a fact, as stated above, that Mrs. Fridenberg was not a party thereto. Though she knew of the order and believed it specified the rate of interest and other terms stated in the mortgage, she has not lent her money simply upon the security of the liability of the estate as contemplated by such order ; this is plain from the note and mortgage, which are the repository of the terms of the contract between her and the pe-

titioners, and which show that she in fact lent her money not solely on the security of the estate of Parkhurst.

It is very evident, however, judging by the record before us, that the order never was of any validity as to the estate of Parkhurst. Neither of the lots are shown to be a part of the fund used by the testator in the business he · was conducting at his death, in Jacksonville and Palatka, or to have been purchased with money belonging to such business, and the children were not parties to the said petition or order. The consequence is that, in so far as they acted or pretended to act, either under the will or under the order, they acted without lawful authority to bind the estate of Parkhurst. Wilson vs. Fridenberg, 20 Fla., 359; 21 Fla., 390, 391. Acting thus without authority their action is, in the light of the above authorities, and all others we have seen, binding upon them personally. It cannot, upon the face of this record, be pretended that Mrs. Fridenberg undertook to insure the validity of the petitioners' warrant of authority for binding the estate of Parkhurst. In so far as they treated with her, representing themselves as having authority to bind said estate either under the will or by virtue of the order, and in so far as she lent them money in reliance upon the security of either, they must be held to make it good and to be personally bound.

The fact that the money lent by Mrs. Fridenberg was not used for the personal benefit of the petitioners makes no difference, as is shown by one or more of the authorities cited above. It was a good consideration for the promise, and they received it from her, and if they have used it so · that they can never be reimbursed from the estate, it is not her fault. It makes no difference that she may have known how they intended to use it.

It is moreover plain that the terms upon which the money was borrowed, as shown by the bond, (or so-called

promissory note) are not authorized by the order. There is a difference in the interest, and as to payment of taxes on the loan, should there be any. The mortgage shows other and additional differences.

There is nothing in the third plea, or bill of complaint made part of it, which estops the defendant in error from maintaining this action. It is a bill in equity to reach the lots. It is not inconsistent with and nowhere disclaims any right to a personal remedy ; but on the contrary prays for a personal decree for the balance which might remain unpaid after a sale of the lots. It is not alleged that any disposition was made of it inconsistent with the maintenance of this action, and yet it is alleged that it has been adjudicated by the Circuit and the Supreme Court. If such adjudication was adverse to this action it should have been pleaded.

In what we have said we have made no mention of the fact of Mrs. Wilson's coverture. Of course we do not mean to say that she is personally liable on the instrument sued on. In passing upon the liability of her husband we have assumed all the time that she is not personally liable, yet if she was so liable her husband would likewise still be so.

What we have said is sufficient to dispose of the case in so far as the demurrer is concerned, but before passing to the second assignment of error it may be well to notice specially some points in the brief of counsel for the plaintiff in error, though when we have carefully considered briefs and the authorities they cite, it cannot be claimed, nor will the business of this court permit that we should do so, as a rule.

It is claimed that this instrument is a joint and not a joint and several instrument, and that the obligations sought to be enforced according to the declaration exist

only by virtue of the covenant declared on, and that a several judgment *at law* cannot be rendered on it except where, under chapter 1938, McC's. Dig., p. 814, §19, there is a return of service as to one or more and not as to all. The declaration shows that Mrs. Wilson, at the time of executing the instrument, was the wife of the plaintiff in error. At law the instrument is not binding on her, but is his obligation alone, whether he be considered as a principal or as a surety. To have made her a party would have been not only useless but improper. In Ankerstein vs. Clarke, 4 Term Reports, 616, in which 3 Leving, 403, 1 Strange, 229, and 2 Mod., 217, are cited, it is said, quoting from 2 Mod.: "The indenture being by baron and feme it was therefore true that it was by the baron," &c. Unangst vs. Fitter, 84 Penn. St., 135; Robinson vs. Robinson, 11 Bush, 174; Smiley vs. Head, 2 Rich., S. C., 590; Foxworth vs. Bullock, 44 Miss., 457; Bayliss on Sureties, 148. The decision in U. S. vs. Price, 9 How., 83, cited for plaintiff in error, is to the effect that a court of equity will not give a remedy against the personal assets of a deceased surety when the remedy at law has been lost by the election of the obligee to take a joint judgment on a joint and several obligation. The liability *at law* of the husband on this instrument is the question before us, and upon the authorities we think he and no one else is liable in such forum, and in our opinion the case of U. S. vs. Price, and that of Pickersgill vs. Lahens, 15 Wall., 140, a suit to pursue the estate of a deceased surety upon a joint bond in equity who had died before the principal obligor therein, are not in point.

It is further contended that the act or acts resulting in the execution of the instrument sued on and the mortgage, the husband acting as co-administrator in virtue of his relation to the estate as husband of the executrix, and the

two constituting in law one, that is one representative of the estate, and the presence of the husband being necessary to give the transaction validity as the single act of the representative of the. estate, but he having no representative character or relation to the estate except as incident to his relation of husband of the executrix, and joining in the execution of the papers only because it was necessary to make such execution by her valid, and going no further than was necessary to so make it valid and complete, it cannot be considered as his single covenant or as binding on him personally.

The clear effect of the petition is to show that the plaintiff in error assumed to act as a representative of the estate of Parkhurst, with his wife, and was seeking with her to borrow money for the purpose of meeting liabilities which he thought it was bound for. In the absence of anything to the contrary the only "representative capacity" which he can be held to have stood in, is that of executor in right of his wife. There is nothing in the order that excludes him from the rights of an administrator which his relation of husband gave him, nor from any liability which may legally attach to the exercise of such right or to him personally on any personal obligations to be assumed by him in dealing with third parties. Though he is not spoken of as " executor in right of his wife," he is in effect treated as such, both as to present and future concerns or management of the estate.

In Toiler's Law of Executors and Administrators, 241, 257, we find it laid down that if a married woman be an executrix or administratrix, the husband has a joint interest with her in the effects of the deceased, such as devolves the whole administration upon him and enables him to act with or without her assent. Edmondson vs. Roberts, 1 How., (Miss.,) 322. In Alabama it was held in Pistole vs. Street,

5 Porter, 64, that when an administratrix marries, the husband, during the joint lives of the wife and himself, is invested with all the rights of the administration, and she becomes incapable of controlling the property of her intestate or the acts of her husband in disposing of it; and in Williamson vs. Hill, 6 Porter, 184, that by the marriage of a *feme sole* administratrix, the husband becomes a joint administrator with her, and if the husband sue or be sued as administrator, the wife must be joined with him.    *    *    *
A widow who was executrix of her deceased husband married and was sued by a creditor of the testator, her husband being joined as a defendant although he had never joined her in any bond under the statute requiring a husband to so join his wife when she shall become an executrix or administratrix, and it was held that the statute did not apply, and the plaintiff was entitled to judgment. Airhart vs. Murphy, 32 Texas, 131; see, also, Cassedy vs. Jackson, 45 Miss., 391; Barber vs. Bush, 7 Mass., 509. In Stairley vs. Rabe, McMullen's Eq., 22, where an executrix married a second husband in necessitous circumstances, and there were infant children, and the husband was shown to be incapable of managing the estate in a judicious manner, and the estate likely to be made waste of, the court appointed a receiver to manage the estate. Lindsey vs. Lindsey, 1 Dess., 150. In Scott vs. Gamble, 9 N. J., Eq., 218, the doctrine held is that where one intermarried with a widow who was executrix of her late husband, and had taken upon himself the execution of the will, he assumes all the responsibilities which devolved upon his wife as executrix. See also Smith vs. Smith, 21 Beavan, 385; Clough vs. Dixon, 8 Sumn., 594; 3 M. & C., 491. These authorities indicate somewhat the real character of the relation of a husband of an executrix. We think that the most favorable and only reasonable view to take of the

action of the plaintiff in error is that he, in view of the injunction, recognized his legal relation to the estate through his marriage, and was acting upon it.   Taking this view, he is as much liable upon the instrument sued on as if he had been a co-executor by appointment and she *a feme sole*. There is not to be found in any. of the proceedings, nor in the instrument sued on, or the mortgage, any reservation against the liability which the law naturally attaches to his action in the premises, a fact which strikes us as quite inconsistent with the idea of the parties having entertained the belief that he was acting in any but the ordinary representative capacity growing out of his relation to the executrix.

The cases of McBean vs. Halderman, 1 D. & E., 180, and. Hodgson vs. Dexter, 1 Cr., 345, are those of public or governmental agents whose contracts, though in form personal, are ordinarily for reasons of public policy, and as an exception to the rule in other cases, held to bind the government only, if made by authority and on behalf of the government.

There was no error in the order sustaining the demurrer to the pleas.

II.  The second assignment of error is that the court erred in rendering final judgment.   The instrument filed with the clerk, and upon which he entered judgment, is under seal; it is sealed with scrolls which are attested or acknowledged in the bond to be seals ; it is a bond or covenant to a certain sum of money—$6,000—and interest thereon to pay be compounded, and to pay all taxes and assessments on the loan under the laws of the State of Florida.   It is set out at length in the judgment.   It is not described as an instrument under seal in the declaration, but is declared upon in the single count thereof simply as a promissory note for payment of the six thousand dollars and the interest.   It is

not a promissory note. The copy of the instrument filed with the declaration, though a true copy of the real instrument, is not made part of the declaration by apt words, assuming this may be properly done. The clerk had no authority in law to enter judgment upon the production of the sealed instrument, though it is quite natural that, in the absence of better advice, he should have done so. No blame should be imputed to him. The declaration is upon an instrument of a different class from that upon which judgment has been entered.

There is a fatal variance between the *allegation* and the *probate*. Anderson vs. Bullock, 4 Mumf., 442. After the failure of the defendant, Wilson, to plead over under the Judge's order, the proceedings were *ex parte* and the plaintiff was entitled to take judgment in accordance with his declaration, and not otherwise. He should have applied to the Judge for leave to amend his declaration, though, in view of our statutes as to forms of action, we lay no stress upon the fact that the action—trespass on promises—is not proper, yet we cannot overlook the fact that the declaration does not disclose an action on the instrument upon which judgment has been rendered. It was the declaration and not the copy that the defendant admitted when he failed to plead over. We cannot avoid reversing this judgment and remanding the case for further proceedings, not inconsistent with this opinion, and it is so ordered.